CARLETON L. BRIGGS, SBN 117361
Law Offices of Carleton L. Briggs
740 Fourth Street, Suite 202
Santa Rosa, CA 95404-4421
Telephone: (707) 523-2251
Facsimile: (707) 523-2253
E-mail: clbriggs@sonic.net

Attorneys for Plaintiffs George E. Barich
and Laurie Alderman

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GEORGE E. BARICH** and **LAURIE ALDERMAN**,<br><br>Plaintiffs,<br><br>vs.<br><br>**CITY OF COTATI** and **JOHN A. DELL'OSSO**,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR**<br><br>**- VIOLATIONS OF CIVIL RIGHTS**<br>**- *MONELL* CLAIM**<br>**- VIOLATION OF AMERICANS WITH DISABILITIES ACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs George E. Barich and Laurie Alderman, by and through their undersigned attorneys, hereby bring this action under 42 U.S.C. § 1983 and 42 U.S.C. § 12101 against Defendants the City of Cotati and John A. Dell'Osso to redress Plaintiffs' civil and legal rights, as follows:

**PARTIES**

1.  Plaintiff George E. Barich ("Barich") is, and was at all times relevant, a resident of the City of Cotati, County of Sonoma, California.

2.  Plaintiff Laurie Alderman ("Alderman") is, and was all times relevant, a resident of the City of Cotati, County of Sonoma, California.

3.  Defendant City of Cotati (sometimes referred to herein as the "City") is, and was at all times relevant, a municipal corporation, organized under the laws of the State of California. Defendant City is located in the County of Sonoma and is governed by a city council form of governance. Defendant City was at all relevant times the public employer of Defendant John A. Dell'Osso.

4.  Defendant John A. Dell'Osso ("Dell'Osso") was, at all times relevant, a resident of Cotati and a member of the Cotati City Council and served as the Mayor of the City of Cotati. In his capacity as a Council Member and Mayor, Dell'Osso was acting as a public officer, agent, servant, or employee of the City at the time of the incidents alleged herein.

5.  At all relevant times, Dell'Osso was acting under color of the laws, statutes, ordinances, regulations, policies, customs, and/or usages of the State of California and the City of Cotati, in the course and scope of his duties and function as an officer, agent, servant, and employee of Defendant City of Cotati. Dell'Osso was acting for, and on behalf of, and with the power and authority vested in him by the City and was otherwise performing and engaging in conduct incidental to the performance of his lawful functions in the course of his duties. He is sued in his individual capacity.

**JURISDICTION AND VENUE**

6.  Claims I through V are brought under 42 U.S.C. §§ 1983 and 1988. Jurisdiction is conferred under 28 U.S.C. §§ 1331 and 1343, applicable to actions brought for the redress of violations of a plaintiff's constitutional and civil rights under the United States Constitution as well as 42 U.S.C. § 1983. This Court has authority to award Plaintiffs Barich and Alderman attorney fees under 42 U.S.C. § 1988.

7.  Claim VI of this action is brought under the Americans with Disabilities Act ("ADA"). Jurisdiction is conferred under Title II of the ADA, 42 U.S.C. §§ 12131-12132, and 28 U.S.C. §§ 1331 and 1343. The Court may grant the relief sought in

this action pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has authority to award Plaintiff Barich attorney fees under 42 U.S.C. § 12205.

8. Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b) and (c) in that Defendant City of Cotati is located within the district, and the events giving rise to this claim occurred within the district.

**NOTICE OF CLAIMS**

9. Although not required as a prerequisite to a federal claim, before filing this action, Barich timely filed three separate claims under the Government Tort Claims Act, California Government Code § 810 et seq., with the City of Cotati, setting forth the facts underlying Barich's claims.

10. Barich's claims related to three separate incidents that occurred at public meetings of the Cotati City Council held on January 8, January 22, and March 27, 2019, respectively.

11. Barich filed the above-referenced three claims with the City on April 16, 2019, within the six-month statute of limitations period. On June 3, 2019, the City's insurance carrier served a Rejection of Claim as to all three claims by letter dated June 3, 2019. The letter states that the claims were "rejected by operation of law on June 3, 2019." Barich filed a second, supplemental claim relating to the March 27, 2019 incident, specifically referencing the ADA, on July 31, 2019. On August 6, 2019, the City's insurer sent another rejection letter to Barich, indicating that the claim presented on July 31, 2019 was rejected by operation of law on August 6, 2019.

12. In addition, on July 17, 2019, within the six-month statute of limitations period, Barich filed an Americans with Disabilities Act Discrimination Complaint with the U.S. Department of Justice, Civil Rights Division, Disability Rights Section, regarding the incident of March 27, 2019. The Disability Rights Section elected not to take any action on the complaint for lack of resources, on or about November 1, 2019.

13. Alderman's claims relate to two separate incidents that occurred at public meetings of the Cotati City Council held on January 8 and January 22, 2019, respectively, and her claims are filed within the applicable statute of limitations.

## GENERAL ALLEGATIONS

14. The City of Cotati is the smallest incorporated municipality in the County of Sonoma. The city council meetings, as well as certain other meetings, are open to members of the public who may speak during a public comment period. Meetings may be observed by members of the public online, as well as in person. Members of the public who cannot attend city council meetings in person are routinely allowed to have representatives speak for them and to have their written statements read into the record during the public comment period.

15. Barich, a former city council member, is a frequent attendee and speaker at the council meetings. He often disagrees with policies advanced by the council and over the years has engaged in spirited debate with several council members; he has been called both a "gadfly" and a "watchdog" by the local press. Alderman is also a frequent attendee and speaker at the council meetings.

16. Barich suffers from progressive hearing loss along with Tinnitus (chronic ringing in the ears) for which there is no cure. Since about 2005, when city meetings and workshops were held in the newly built community room at the Cotati Police Department rather than the city council chambers next door, the City ignored Barich's complaints that he could not hear the discussion properly over the central air conditioning unit being employed during the meetings. For the last 10 years, he has often required the use of a city-provided electronic hearing-assist device at the council meetings in the city council chambers. The City is now using his disability to prevent his participation in city council proceedings in the community room, where the provided electronic hearing-assist devices do not work because of the lack of a public address system, thus denying him his right to

full participation in the city council's deliberations.

17.     This is not the first time the City has violated Barich's civil rights during and after city council meetings. In 2014, the City's Chief of Police threatened to arrest Barich for exercising his First Amendment rights, leading to a similar federal civil rights action against the City and Chief Parish, <u>Barich v. Cotati and Michael Parish</u>, Case No. 3:15-CV-00350 VC, which was settled in 2015 with the payment of $50,000 by the City to Barich. At that time, the Court, the Honorable Vince Chhabria presiding, said the Court was shocked at the City's, and its counsel's, attitude toward the First Amendment. The Court declined to order an injunction against the City but warned that further violation of Barich's First Amendment rights would result in harsh consequences for the City. Undeterred, however, the City has continued to violate Barich's rights, including his right to Equal Protection.

18.     In 2006, Barich had campaigned extensively against former Cotati Mayor Lisa Moore's campaign for re-election as council member. She lost. In 2007, then-private citizen John Moore, husband of Lisa Moore, while clearly intoxicated, approached Barich in the audience at a regularly scheduled city council meeting. Moore said, "Barich, I'm going run you out of town!" An argument ensued, and then-Mayor Pat Gilardi told them both to "knock it off or take it outside."

19.      In July of 2017, during a city council meeting, there was discussion of additional cannabis industry business taxes in Cotati. During public comment, Barich spoke against the tax. In an attempt to intimidate and harass Barich, then-council member John Moore asked Barich, "Mr. Barich, are you still a grower?" The implication was false. Barich had never been a "grower." Later in 2017, in an obvious attempt to chill Barich's speech, council member John Moore called Barich a "money launderer" when Barich tried to speak toward the end of the meeting, during the public comment period. Again, the allegation was false. Barich had never been charged with, nor convicted of, the crime of money laundering. That same John Moore was duly appointed Mayor of Cotati

on December 8, 2020 and has replaced Dell'Osso.

20. On January 8, 2019, the City held a regularly-scheduled city council meeting. The meeting was open to members of the public, including those who wished to speak on various topics. Mayor Dell'Osso presided over the meeting.

21. Barich wished to be heard at the council meeting but was out of town on that date. In his place, Barich appointed Alderman as his attorney-in-fact to present his testimony to council members and members of the public during the public comment period at the meeting. Alderman gave Dell'Osso a copy of the Power of Attorney granting Alderman the authority to speak on Barich's behalf. Alderman reluctantly provided Dell'Osso a copy of Barich's prepared statement upon his demand.

22. Although Dell'Osso accepted Barich's written statement for later inclusion in the record, he refused to allow Alderman to speak on Barich's behalf and refused to allow her to read his testimony into the record during the public comment period, thus depriving Barich of his right to be heard by council members, and depriving Alderman of her right to speak on Barich's behalf. Dell'Osso's actions also deprived members of the public in attendance at the meeting, and members of the public watching and listening online through the City's online live streaming of the city council meeting, the opportunity to hear Barich's comments.

23. On January 22, 2019, the City held a regularly-scheduled city council meeting. As with other regularly scheduled meetings, the meeting was open to members of the public, including those who wished to speak on various topics. Dell'Osso presided over the meeting.

24. As he had done for the January 8, 2019 meeting, Barich appointed Alderman as his attorney-in-fact to present his testimony at the meeting. Alderman presented a notarized copy of the Power of Attorney granting her the authority to speak on Barich's behalf. She had a written statement of Barich, which she intended to read into the record during the public comment period.

25. When Barich's name was called to testify and Alderman presented herself to speak for Barich and to read his statement into the record, Dell'Osso asked the advice of the City Attorney, who stated that the City's "rules" do not allow for speakers to present a power of attorney and comment for someone else. However, to Plaintiffs' knowledge there are no such rules. As he had done on January 8, Dell'Osso refused to allow Alderman to speak on Barich's behalf or to read Barich's testimony into the record, thus depriving Barich of his right to be heard at the meeting, depriving Alderman of her right to speak on Barich's behalf at the meeting and, as with the earlier meeting, depriving members of the public in attendance at the meeting, and members of the public watching and listening online through the City's online live streaming of the city council meeting, the opportunity to hear Barich's comments. Alderman argued with Mayor Dell'Osso and the City Attorney that they were violating Barich's civil rights and that they should seriously reconsider.

26. On March 27, 2019, Barich attended a special meeting of the city council titled "Strategic Planning Meeting." The meeting had not been properly noticed as required by law, and the special meeting's written material had not been made available to Barich or other members of the public before the meeting, also as required by law. The meeting had been scheduled for the community room at the Cotati police station rather than the city council chambers next door.

27. A week before the special meeting, Barich had gone to the Cotati City Clerk's office and requested that an electronic hearing-assist device be provided for his use at the upcoming special meeting. The Cotati City Clerk had assured Barich that he would be provided with a hearing-assist device at the time and place of the special meeting.

28. Barich arrived a few minutes early to the special meeting on March 27, 2019, and the city clerk provided Barich with an electronic hearing-assist device. However, the device did not function inside the community room at the police station.

The clerk then gave Barich a second unit, but it also failed to function.

29. Given that neither device was working, Barich asked the council for an accommodation to address his disability. Despite this request for an accommodation, Barich was relegated to the side of the room without the use of an electronic hearing-assist device.

30. During the meeting, as the council tables were set up in a horseshoe pattern, some members of the city council sat with their backs to the public, including Barich. By placing Barich in the side of the room, with council members intentionally facing away from him, the Mayor made it impossible for Barich to follow along and participate in the discussion.

31. No public-address system was in use at the special meeting. Therefore, Barich had considerable trouble hearing and understanding what was being said.

32. When afforded his three minutes to speak, Barich reminded the council of his hearing disability, informed them that the council was not accommodating his disability, and requested that the meeting be moved to the nearby council chambers where his hearing disability could be accommodated through the use of the public-address system. As an alternative, Barich requested that, if the special meeting was to be held in the police station community room, that the meeting be rescheduled for another time when the council could accommodate his disability with a working electronic hearing-assist device.

33. Mayor Dell'Osso denied Barich's request for a reasonable accommodation, suggesting that he raise his hand and interrupt the meeting every time he was having trouble hearing the discussion. Barich replied to Dell'Osso that this was unreasonable. Dell'Osso answered that Barich could either stay under the circumstances or leave.

34. Dell'Osso made no effort to call for a recess, contact the City Attorney (who was not present for this meeting) for advice, or meet and confer with the City Manager to address the issue of accommodating Barich's disability. Without being able to

hear the discussion, Barich could not meaningfully participate and left the meeting.

35. To be clear, Barich's claims are not based on the statements of Dell'Osso. Rather, the statements are evidence of the First Amendment, Fourteenth Amendment and ADA violations, which will continue unless enjoined by this Court.

36. Both before and after Dell'Osso refused to allow Alderman to speak on behalf of Barich and to read his statement into the record, Dell'Osso and the City regularly allowed other attendees to speak on behalf of individuals who were not present at the meeting and to read their written statements into the record..

## CLAIM I
## Violation of Equal Protection Clause
## (Barich Against Defendant Dell'Osso)

37. Paragraphs 1–36 are part of this claim.

38. Barich is a member in an identifiable class - individuals desiring to speak at city council meetings but who are unable to attend and seek to have their statements read into the record by a third party.

39. Dell'Osso regularly permitted other individuals, who are no different from Barich and in fact are identical to him in terms of their desire to be heard whilst being unable to attend the meeting. These individuals are identical to Barich in all relevant aspects or directly comparable to him in all material aspects.

40. On the occasions identified above, on January 8, 2019 and January 22, 2019, Barich was intentionally treated differently from others similarly situated who were permitted to have their statements read into the record by a third party at a city council meeting while they themselves were not present at the meeting.

41. There is no rational basis for the difference in treatment between Barich and the other similarly situated individuals, and Dell'Osso never identified any such basis.

42. As a proximate result of these acts, Barich has suffered damages, including but not limited to, physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation, and embarrassment.

43. Barich is entitled to all damages proximately caused by Dell'Osso's wrongful conduct, including attorney fees.

## CLAIM II
**Violation of First Amendment Right to Freedom of Speech**
**(Alderman Against Defendant Dell'Osso)**

44. Paragraphs 1–43 are part of this claim.

45. In doing the acts alleged herein on January 8, 2019, in refusing to allow Alderman to present Barich's testimony as his legally authorized representative during the public comment period on matters of public interest at the council meeting, Dell'Osso, acting under the color of law and in violation of 42 U.S.C. § 1983, violated Alderman's First Amendment right to freedom of speech by using his power to prevent Alderman from acting as Barich's attorney in fact and from being heard on matters of public importance at a public forum based solely on the content, and the source, of the testimony she intended to present before the council.

46. Dell'Osso's unlawful actions occurred as the result of an official policy or custom and were done willfully, knowingly, and with the specific intent to deprive Alderman of her constitutional rights under the First and Fourteenth Amendments to the U.S. Constitution, as well as under 42 U.S.C. § 1983. In doing the acts alleged herein, Dell'Osso acted with deliberate indifference to Alderman's constitutional rights.

47. As a proximate result of these acts, Alderman has suffered damages, including but not limited to, physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation, and embarrassment.

48. Alderman is entitled to all damages proximately caused by Dell'Osso's wrongful conduct, including attorney fees.

## CLAIM III
### Violation of First Amendment Right to Freedom of Speech
### (Alderman Against Defendant Dell'Osso)

49. Paragraphs 1–48 are part of this claim.

50. In doing the acts alleged herein on January 22, 2019, in refusing to allow Alderman to present Barich's testimony as his legally authorized representative during the public comment period on matters of public interest at the council meeting, Dell'Osso, acting under the color of law and in violation of 42 U.S.C. § 1983, violated Alderman's First Amendment right to freedom of speech by using his power to prevent Alderman from acting as Barich's attorney in fact and from being heard on matters of public importance at a public forum based solely on the content, and the source, of the testimony she intended to present before the council.

51. Dell'Osso's unlawful actions occurred as the result of an official policy or custom and were done willfully, knowingly, and with the specific intent to deprive Alderman of her constitutional rights under the First and Fourteenth Amendments to the U.S. Constitution, as well as under 42 U.S.C. § 1983. In doing the acts alleged herein, Dell'Osso acted with deliberate indifference to Alderman's constitutional rights.

52. As a proximate result of these acts, Alderman has suffered damages, including but not limited to, physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation, and embarrassment.

53. Alderman is entitled to all damages proximately caused by Dell'Osso's wrongful conduct, including attorney fees.

## CLAIM IV
### Violation of Equal Protection Clause
### (Alderman Against Defendant Dell'Osso)

54. Paragraphs 1–53 are part of this claim.

55. Alderman is a member in an identifiable class - individuals desiring to speak at city council meetings to orally present a written statement by someone who is

unable to attend and who has authorised another person to read his or her statement into the record.

56. Dell'Osso regularly permitted other individuals, who are no different from Alderman and in fact are identical to her in terms of their desire to present testimony of someone unable to attend the meeting, to read a statement from an absent member of the public. These individuals are identical to Alderman in all relevant aspects or directly comparable to her in all material aspects.

57. On the occasions identified above, Alderman was intentionally treated differently from others similarly situated who were permitted to read the statements of another person into the record at the city council meetings.

58. There is no rational basis for the difference in treatment between Alderman and the other similarly situated individuals, and Dell'Osso never identified any such basis.

59. As a proximate result of these acts, Alderman has suffered damages, including but not limited to, physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation, and embarrassment.

60. Alderman is entitled to all damages proximately caused by Dell'Osso's wrongful conduct, including attorney fees.

### CLAIM V
### *Monell* Claim
### (Barich and Alderman Against Defendant City of Cotati)

61. Paragraphs 1–60 are part of this claim.

62. In doing the acts alleged above, Dell'Osso acted under color of state law.

63. The acts of Dell'Osso deprived Barich and Alderman of their particular rights under the laws of the United States and the United States Constitution as alleged herein.

64. Dell'Osso was a final policy maker and had final policymaking authority from the City of Cotati concerning the wrongful acts alleged herein.

65. The wrongful acts of Dell'Osso were carried out under policies and practices of the City that existed at the time of the conduct alleged, and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the City.

66. The City, by its policy-making agents, servants, and employees, authorized, sanctioned and/or ratified Dell'Osso's wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

67. The acts complained of were carried out by Dell'Osso in his capacity as Mayor under the customs, policies, usages, practices, procedures, and rules of the City.

68. The aforementioned customs, practices, procedures, and rules of the City include, but are not limited to: (1) denying certain individuals their rights under the First Amendment based on the content of their speech; and (2) refusing to accommodate persons with disabilities.

69. The existence of these unlawful de facto policies and/or well-settled and widespread customs and practices is known to, encouraged, and/or condoned by supervisory and policy-making officials of the City.

70. The constitutional and statutory violations by the City, through the actions of the Mayor, Dell'Osso, were proximately caused by the policies, practices, and/or customs developed, implemented, enforced, encouraged, and sanctioned by defendant City of Cotati, including the failure to: (1) adequately supervise and train its agents, including Mayor Dell'Osso, thereby failing to adequately discourage constitutional violations on the part of its agents; and (2) properly monitor and discipline its agents, including Dell'Osso.

71. The City's unlawful actions were done willfully, knowingly, and with the specific intent to deprive Barich and Alderman of their constitutional rights under the

First and Fourteenth Amendments to the U.S. Constitution.

72. The City acted with deliberate indifference to Barich's and Alderman's constitutional rights. As a proximate result of these acts, Barich's and Alderman's constitutional rights have been violated, which caused them to suffer physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation, and embarrassment.

73. Barich and Alderman have no adequate remedy at law and will suffer serious irreparable harm to their constitutional rights unless the City is enjoined from continuing the unlawful practices, policies, and/or customs that have proximately caused these abuses to occur.

**CLAIM VI**
**Violation of Americans with Disabilities Act**
**(Barich Against Defendant City of Cotati)**

74. Paragraphs 1-73 are part of this claim.

75. The Americans with Disability Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA") sets forth certain requirements for the accommodation of persons with disabilities by public and private entities. Title II of the ADA, 42 U.S.C. § 12132 prohibits discrimination on the basis of disability by public entities, such as the City of Cotati, which is a "public entity" within the meaning of the ADA, 42 U.S.C. § 12131(1); 28 C.F.R. § 35.104, and is therefore subject to Title II of the ADA, 42 U.S.C. §§ 12131 et seq., and its implementing regulations. A Title II entity is required by the statute to accommodate persons with a hearing disability, including a partial hearing loss, i.e. being hard of hearing.

76. Barich suffers from a partial hearing loss and therefore is a disabled person entitled to protection under the ADA. Barich is a resident of the City of Cotati and is entitled to participate in meetings of the city council at which comments by members of the public are allowed to be presented.

77. As a person protected under Title II, Barich was entitled to various accommodations when attending a public meeting, including but not limited to, being provided with an electronic hearing-assist device that would enable him to clearly hear the proceedings at the March 27, 2019 meeting of the city council. As alleged herein, Barich was excluded from participation in the city council meeting by reason of his disability.

78. Despite his requests, the City failed and refused to accommodate Barich. The Mayor not only sat Barich in the side of the room, but some council members participating in the meeting sat with their backs to him, thus preventing him from hearing their comments. No public address system was in use, no working electronic hearing-assist device was provided, and Barich was effectively excluded from participating in the meeting.

79. In doing the acts alleged herein, the City willfully disregarded Barich's disability, intentionally violating Title II of the ADA and purposely doing so to prevent his participation in the city council meeting.

80. In doing the acts alleged herein, which occurred as the result of an official policy or custom, the City acted with malice and reckless indifference to Barich's constitutional rights. As a proximate result of these acts, Barich's constitutional rights have been violated, which caused him to suffer physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation, and embarrassment.

81. Barich is entitled to all damages proximately caused by the City's wrongful conduct, including attorney fees.

**PRAYER FOR RELIEF**

Plaintiffs George E. Barich and Laurie Alderman pray for relief as follows:

1. An injunction enjoining the City from engaging in conduct intended to prevent Alderman from exercising her First Amendment rights to participate in the public

proceedings of the City of Cotati City Council and to deny Barich and Alderman equal protection as described herein;

      2.    Affirmative relief in the form of accommodation for Barich's disability so that he may meaningfully participate in the proceedings of the City Council as described herein;

      3.    An award of compensatory damages;

      4.    An award of exemplary damages;

      5.    An award of attorney fees under 42 U.S.C. §§ 1988 and 12205;

      6.    An award of costs of suit under 42 U.S.C. §§ 1920, 1988 and 12205; and

      7.    For other such other and further relief as the Court deems appropriate and just.

Dated: January 4, 2021                          **Law Offices of Carleton L. Briggs**

/s/ Carleton L. Briggs
CARLETON L. BRIGGS
Attorneys for Plaintiffs George E. Barich and Laurie Alderman

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on each claim.

Dated: January 4, 2021                          Law Offices of Carleton L. Briggs

/s/ Carleton L. Briggs
CARLETON L. BRIGGS
Attorneys for Plaintiffs George E. Barich and Laurie Alderman