Peter Urhausen Esq. SBN 160392
Sean Conley Esq. SBN 130814
GIBBONS & CONLEY
3480 Buskirk Ave., Suite 200
Pleasant Hill, CA 94523
T: 925.932.3600
F: 925.932.1623

Attorney for Defendants, CITY OF COTATI and JOHN A.
DELL'OSSO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE E. BARICH and LAURIE ALDERMAN,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CITY OF COTATI and JOHN A. DELL'OSSO,<br><br>                    Defendants. | Case No. 21-cv-00034-EMC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR MORE DEFINITE STATEMENT OF FIRST AMENDED COMPLAINT**<br><br>Date:          July 15, 2021<br>Time:         1:30 p.m.<br>Location:    Courtroom 5/Zoom |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on the above date, time, and courtroom of the above-entitled Court, or as soon thereafter as may be heard, Defendants City of Cotati and John Dell'Osso will and hereby do move the Court for a motion to strike and/or dismiss Plaintiffs' claims, or for a more definite statement, on the issues set forth in the points and authorities filed herewith, including the following issues:

1. The allegations of events before January 8, 2019 should be stricken.

2. The claims for violation of the First Amendment should be dismissed or clarified.

3. The claims for violation of Equal Protection should be dismissed or clarified.

4. The *Monell* cause of action should be dismissed or clarified.

5. The claims for violation of the Americans with Disabilities Act should be dismissed or clarified.

6. The claim for exemplary damages should be dismissed, stricken, or clarified.

7. The requests for injunctive relief should be dismissed, stricken, or clarified.

This motion will be based upon this notice of motion, the points and authorities filed herewith, the request for judicial notice filed herewith and items judicially noticed, the declaration of Lauren Berges filed herewith, the declaration of Peter Urhausen filed herewith, the pleadings and papers on file in this action, as well as any further material properly presented to the Court in this matter.

Dated: May 14, 2021

GIBBONS & CONLEY

By: */s/ Peter Urhausen*
PETER URHAUSEN, ESQ.
Attorney for Defendants, CITY OF COTATI and
JOHN A. DELL'OSSO

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

Introduction ................................................................................................................. 1

The FAC Fails to Cure the Deficiencies of the Original Complaint Because Most
of the Meetings Identified by Plaintiffs Involve People Speaking for Corporate
Entities and <u>None</u> Involve a Person Speaking Once on His Own Behalf and Another
Time on Behalf of Someone Else ................................................................................. 2

Standard ....................................................................................................................... 2

Statement of Issues to be Decided .............................................................................. 4

Allegations of the Complaint ...................................................................................... 4

LEGAL ARGUMENT ................................................................................................ 13

The Allegations of Events Before January 8, 2019 Should be Stricken ..................... 13

The Claims for Violation of the First Amendment Should be Dismissed or Clarified ..... 14

The Claims for Violation of Equal Protection Should be Dismissed or Clarified ........... 16

The *Monell* Cause of Action Should be Dismissed or Clarified ...................................... 18

The Claims for Violation of the Americans with Disabilities Act Should be
Dismissed or Clarified ................................................................................................. 19

The Claim for Exemplary Damages Should be Dismissed or Clarified ........................ 21

The Requests for Injunctive Relief Should be Dismissed or Clarified ......................... 22

CONCLUSION ............................................................................................................ 23

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>CASES:</u>

3
*Ashcroft v. Iqbal*
4
(2009) 556 U.S. 662 ................................................................................................ 18, 19

5
*Barnes v. Gorman*
(2002) 536 U.S. 181 ...................................................................................................... 22
6

*Bell Atlantic Corp. v. Twombly*
7
(2007) 550 U.S. 544 ............................................................................................... 18, 19

8
*Castro v. City of Los Angeles*
9
(9th Cir. 2015) 797 F.3d 654.......................................................................................... 22

10
*Chandler v. State Farm*
(9th Cir. 2010) 598 F.3d 1115........................................................................................... 3
11

*City of Newport v. Fact Concerts, Inc.*
12
(1981) 453 U.S. 247, 271 ............................................................................................... 22

13
*Diamond v. Corazon*
14
(N.D. CA. 2016) 2016 WL7034036, #4.......................................................................... 23

15
*Hernandez v. Tulare*
16
(9th Cir. 2012) 666 F.3d 631........................................................................................... 18

17
*Maldonado v. Harris*
(9th Cir. 2014) 370 F.3d 954........................................................................................... 13
18

*Midgett v. Tri-County Metropolitan Transit District*
19
(9th Cir. 2001) 254 F.3d 846.......................................................................................... 20

20
*Minnesota State Org. for Community Colleges v. Knight*
21
(1984) 465 US 271, 283 ................................................................................................. 15

22
*Mulligan v. Nichols*
23
(9th Cir. 2016) 835 F.3d 983........................................................................................... 14

24
*Opperwall v. State Farm Fire and Casualty Company*
(N.D. Cal. 2018) 2018 WL 1243085.............................................................................. 21

25
*Ribakoff v. Long Beach*
26
(2018) 27 Cal.App.5th 150, 173 ..................................................................................... 15

27

28

*Smith v. Wade*
(1983) 461 U.S. 30 ........................................................................... 21

*Starr v. Baca*
(9th Cir. 2011) 652 F.3d 1202 ........................................................ 18

*United States v. Ward*
(9th Circuit 1992) 989 F.2d 1015, 1020 ......................................... 15

*Updike v. Multnomah County*
(9th Cir. 2017) 870 F.3d 939 .......................................................... 21

## **CODES/STATUTES:**

Federal Rules of Civil Procedure Rule 12(b)(1) ............................... 3
Federal Rules of Civil Procedure Rule 12(b)(6) ............................... 3
Federal Rules of Civil Procedure Rule 12(c) .................................... 3
Federal Rules of Civil Procedure Rule 12(f) ..................................... 3
Government Code §54954 ............................................................... 20
Government Code §54954.2(a)(1) .................................................. 20
Government Code §818 ................................................................... 22
42 U.S.C. section 1983 ............................................................ 13, 22

## MEMORANDUM OF POINTS AND AUTHORITES

### Introduction

This action involves three incidents. Twice, Plaintiff Alderman was at a Cotati City Council meeting and attempted to appear on behalf of Plaintiff Barich to read a written statement, prepared by Plaintiff Barich, to the City Council. She was not allowed to do so. On that basis, Plaintiffs claim violation of their Equal Protection rights, and Alderman claims violation of her First Amendment rights. The Court previously granted the Defendants' motion to dismiss based upon Plaintiffs' failure to allege facts, rather than legal conclusions, supporting their claims. Plaintiffs have failed to cure this deficiency, after having been given an opportunity to do so, and thus, the Court should now dismiss the Complaint with prejudice.

What the Plaintiffs carefully and consciously avoid pleading are facts to which this Court should take judicial notice, and were the focus of the prior motion to dismiss. First, Plaintiff Alderman was allowed to speak at both Council meetings, and actually did so, as reflected in the minutes of those Council meetings and the video recordings of those meetings. Ms. Alderman chose to speak on other topics. She also attempted to speak separately "on behalf of" Mr. Barich. The Court should also take judicial notice of the City of Cotati's City Council Rules, which provide that a speaker may only speak once, that people may not "trade" their allowable time to speak, and that written communications may be submitted to the Council, but are not read into the record. Plaintiffs again ignore these known time, place, and manner restrictions on presentations at City Council meetings, because Plaintiffs recognize that these facts are fatal to their claims.

A third incident involves an occasion when Plaintiff Barich, who alleges a hearing impairment, attended a planning meeting where audio-assistive devices offered by the City failed to operate properly. Mr. Barich demanded that the meeting be canceled or moved (although this would violate the state law requirements on public meeting notices), and this demand was rejected. Instead, the Mayor suggested that Mr. Barich simply raise his hand if he was actually having difficulty hearing what was being said in the relatively small room. Mr. Barich refused to

1

1  even attempt this accommodation, and instead simply left the meeting of his own volition. It is

2  this single, isolated incident upon which Mr. Barich's ADA claim is based.

3       Furthermore, the allegations do not support injunctive relief or exemplary damages, which

4  should be stricken.

5       As the First Amended Complaint ("FAC") fails to allege any valid claims, it should be

6  dismissed, or, at a minimum, clarified.

7       **The FAC Fails to Cure the Deficiencies of the Original Complaint Because Most of the**

8  **Meetings Identified by Plaintiffs Involve People Speaking for Corporate Entities and <u>None</u>**

9       **Involve a Person Speaking Once on His Own Behalf and Another Time on Behalf of**

10                                    **Someone Else**

11       The primary argument supporting Defendants' Motion to Dismiss the original Complaint

12  regarding the Equal Protection and First Amendment claims was that the City's policy is not to

13  allow a person to speak for three minutes on their own behalf, and to also speak for three minutes

14  on someone else's behalf. The only notable change to Plaintiff's original Complaint is that

15  Plaintiffs list 13 meetings that they describe as "examples" of person's speaking for others during

16  open comment. (See FAC at ¶19.) Plaintiffs do not allege that any of these persons were allowed

17  to speak on their own behalf and on behalf of someone else. And, in fact, none of the meetings

18  identified by Plaintiff have a person speaking on their own behalf and also on behalf of someone

19  else. The meetings identified by Plaintiff date back to 2010. The Court should feel comfortable

20  that Plaintiff has scoured the index of meetings publicly available on the City's website and found

21  none in which a person was allowed to speak for him or herself, and then again for another.

22       Moreover, none of these speakers put in a speaker card for someone else (as Ms. Alderman

23  did here), and then attempted to use the time for that other person to speak.

24       Indeed, the vast majority of the examples cited by Plaintiffs are people speaking for

25  corporate entities, which obviously cannot speak for themselves. Plaintiffs' list even includes the

26  City's own consultant speaking. They list Mr. Scott, an attorney on behalf of his clients, the

27

28

2

Stanley family, who were actually the subject of a public hearing for a nuisance abatement. The closest thing Plaintiffs come to even one person "speaking on behalf" of another person is, ironically, Plaintiff Laurie Alderman's brother, purportedly speaking on her behalf on August 25, 2015, at the Stanley public nuisance abatement public hearing. Even then, Andrew Alderman says that he is speaking "in place of" his sister Laurie Alderman. He submitted a speaker card in his own name, and was allowed to speak once.

In the City's request for judicial notice of these various meetings, we identify the agenda item and the point in the video for the Court's convenience. There were two "examples" for which we could not find the purported speaker – the October 27, 2015, and September 12, 2017, meetings. Plaintiffs' description of them, though, clearly establishes that one was Mr. Scott, again, speaking for the Stanleys in October of 2015, and two individuals speaking for corporate entities on June 27, 2017.

As the specific details and references of the meetings listed in paragraph 19 are set forth in the City's request for judicial notice, there appears to be no reason to set forth more detail here. Suffice it to say – again – the Plaintiffs do not even allege that any of these meetings involved a person speaking on their own behalf, and also on behalf of another.

### Standard

Under Federal Rules of Civil Procedure Rule 12(b)(1), the Court may dismiss allegations of a complaint where the complaint shows an absence of subject matter jurisdiction, including lack of standing on behalf of Plaintiff. *Chandler v. State Farm* (9th Cir. 2010) 598 F.3d 1115, 1122.

Under Rule 12(b)(6), the Court may dismiss allegations of the complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(c), the Court may require a party to clarify allegations which are "so vague or ambiguous that the [responding] party cannot reasonably prepare a response." Under Rule 12(f), the Court may strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading.

///

**Statement of Issues to be Decided**

1.  Should the first claim, entitled Violation of Equal Protection Clause, be dismissed, stricken or clarified.

2.  Should the second claim, entitled Violation of First Amendment Right to Freedom of Speech, be dismissed, stricken or clarified.

3.  Should the third claim, entitled Violation of Equal Protection Clause, be dismissed, stricken or clarified.

4.  Should the fourth claim, entitled *Monell* Claim, be dismissed, stricken or clarified.

5.  Should the fifth claim, entitled Violation of Americans with Disabilities Act, be dismissed, stricken or clarified.

6.  Should the request for punitive damages be dismissed or clarified.

7.  Should the allegations in paragraphs 22-25 be stricken.

8.  Should the request for injunctive relief be dismissed or clarified.

**Allegations of the Complaint**

Plaintiffs allege they are residents of the City of Cotati. (Complaint, ¶¶1-3.) Plaintiffs ambiguously allege that Defendant Dell'Osso is an employee (¶3) and also a member of the City Council, serving as Mayor for Cotati (¶4).

Plaintiff Barich alleges the presentation of a claim to the City pursuant to California Government Code. (¶¶9-11.) Barich states that all of the claims in this Complaint are related to three incidents, occurring on January 8, January 22, and March 27, 2019. (¶10.) Plaintiff also alleges that he presented an ADA claim with the Department of Justice, which declined to take action. (¶12.) Plaintiff Alderman states that her claims are based upon events at the City Council meetings on January 8 and January 22, 2019. (¶13.)

Plaintiffs allege that the City of Cotati has a public comment period during City Council meetings, and allege in conclusory fashion that members of the public who are not available to attend are allowed to have representatives speak for them and to have written statements read into

4

the record. (¶14.) Despite the prior motion to dismiss, Plaintiffs carefully avoid alleging that the City of Cotati has reasonable time, place, and manor restrictions on public presentations. In particular, the Council enforces time limits on public comments. See Request for Judicial Notice, Council Rules IV G(1). Speakers are specifically not allowed to try to trade their time to other speakers, and the rules specify that "speakers may not 'yield' a portion of their allotted time to others." *Id.* at IV G(6). Additionally, the rules also set forth how written communications to the Council should be handled. Where a written communication is being offered at the Council meeting itself, the written communication is delivered to the City Clerk. Rules IV(A)(3). When done so, "although all written communications will become part of the written meeting record, they will not be read into the record at the City Council meeting." *Id.* at IV(A)(5).

Plaintiffs allege that the Cotati City Council operates with consensus, both among the Council Members themselves (¶15) and with the apparent consent of the public, which does not attend to request the Council to change its methods or conclusions (¶16).

The FAC identifies Barich as someone who frequently disagrees with Council members, and identifies Alderman as a frequent Council meeting attendee. (¶20.) Barich identifies himself as having progressive hearing loss and Alderman alleges having some amorphous "physical and medical disabilities." (¶17.) Barich alleges that he has frequently used City provided electronic hearing-assist devices at Council meetings. He also alleges that the provided hearing-assist devices did not work in the "community room," denying him the ability to fully participate in the Council deliberations. (¶21.)

Plaintiffs allege that there is a record of City Council meetings of people "speaking on behalf of others." (¶18.) Plaintiffs list dates and identifications of persons who "spoke for others during the open comment period …" (¶19.) Notable among this list is the identification of most of these instances as someone speaking for some type of business or corporate entity, rather than a person speaking "on behalf of" another person. What is again conspicuously missing is any allegation that these people who spoke were allowed to speak two separate times, once on their

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR
MORE DEFINITE STATEMENT OF FIRST AMENDED COMPLAINT

Case No. 21-cv-00034-EMC

own behalf and once separately as a representative of another person or entity. Nor is there an allegation that these people came and stated that they wished to read a statement by some other person, or even by the corporate entity, let alone read a statement and then had a separate speaking time allotment. Indeed, it appears the only example of someone reading another's statement was the September 10, 2019 meeting, in which the speaker – during his three minutes – chose to read from a statement. He made no attempt to appear for another person, let alone another person and himself.  Thus, Plaintiffs again fail to address the principal issue raised in the previous, successful motion to dismiss.

Plaintiffs next allege some entirely irrelevant events from various dates years ago. The first is from 2014, and involves an alleged statement by a judge about a threat to arrest Barich. (¶22.) This allegation has absolutely nothing to do with any of the issues relevant to this Complaint, and is entirely gratuitous. Plaintiffs next allege that, 15 years ago, some other event occurred involving Barich and other people not related to the current case, and again having absolutely nothing to do with any relevant issue in this case. Aside from slurs on the characters of third parties not present to defend themselves, the allegations are completely gratuitous. (¶23.) Plaintiff then alleges that other Council Members, exercising their First Amendment rights, have criticized the Plaintiffs at public meetings. (¶24.) This constitutionally protected speech is not associated with Defendant Dell'Osso in any way. In paragraph 25, Plaintiffs make allegations about yet another stale event, this time from 2017, again not involving any of the Defendants, and not involving any of the issues in the operative claims in this case.

At paragraph 26, Plaintiffs begin to focus upon the actual issues in this action. Plaintiffs allege that there was a January 8, 2019 City Council meeting for which Plaintiff Barich was voluntarily not in attendance. Barich asked Plaintiff Alderman to present a written statement on his behalf during a public comment period at that meeting. (¶27.) Plaintiff Alderman presented Defendant Dell'Osso with a copy of this prepared statement, which was accepted by Dell'Osso for inclusion in the record, but Alderman was not allowed to read the statement into the record

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR                    Case No. 21-cv-00034-EMC
MORE DEFINITE STATEMENT OF FIRST AMENDED COMPLAINT

during public comment. (¶21-28.) The Court is asked to take judicial notice of the fact that Plaintiff Alderman was, in fact, allowed to, and did, speak at the public comment session of this Council meeting. See Request for Judicial Notice, City Council minutes of January 8, 2019 and the video recording of the meeting. This was noted in Defendants' prior motion, yet Plaintiffs ignore the true facts of the incident; namely, that Plaintiff Alderman was allowed to speak at the City Council meeting, and chose to speak about something other than whatever Mr. Barich had given her. What she was not allowed to do was to additionally appear on behalf of Barich to separately read that written statement.

Plaintiffs allege that a similar event occurred at the January 22, 2019 City Council meeting. (¶¶29-33.) Although Plaintiffs know otherwise from the prior motion to dismiss, Plaintiffs evasively suggest that Alderman was deprived of a right to speak at the City Council meeting, when in fact the truth is that she was not allowed to violate the City Council time, place, and manner, restrictions by appearing an additional time to speak separately "on behalf of" Barich by reading his written statement. (¶31.) See Req. Jud. Notice of the January 22, 2019 meeting minutes and video. Alderman was allowed, and did in fact, speak to the Council during that meeting, and therefore Plaintiffs carefully couch this claim as depriving Alderman of her "right to speak on Barich's behalf," rather than any claim that Alderman was deprived of her constitutionally protected right to speech. (¶32.)

The Complaint alleges that a March 27, 2019 "special meeting" of the City Council took place at a "community room" at the police station, rather than the usual City Council chambers. (¶34.) Plaintiff Barich had requested an electronic hearing-assist device, and the City Clerk stated that the device would be provided. (¶35.) At the meeting, Barich was given two electronic hearing-assist devices, but both failed to function properly. (¶36.) Barich states that the format of the meeting resulted in some Council members facing away from Barich and there was no public address system in place, resulting in Barich having "trouble" hearing and understanding what was being said. (¶38-39.) Barich addressed the Council and reported his hearing disability, and asked

7

that the meeting be moved to another location or rescheduled. (¶41.) Defendant Dell'Osso suggested the alternative that Barich raise his hand if he was having trouble hearing the discussion and Barich summarily rejected this accommodation. (¶42.) Barich thereafter unilaterally chose to leave the meeting, and does not allege that he made any attempt to utilize the accommodation offered. (¶43.) The Complaint alleges that the hearing-assist devices would not function at the location of the meeting, and snidely insinuates, but does not factually allege, the possibility of intentionality in the failure of the hearing-assist devices. (¶43.)

There is also a peculiar allegation that Alderman was provided "accessible furniture" and that for unidentified reasons she made a request (contrary to the transcript attached to the Complaint as Exhibit D) that the meeting be moved to another location for "ADA accommodation." (¶45.) This allegation is completely mysterious as Alderman has not identified any particular disability, affirmatively alleges that she was provided accommodation, and does not make an ADA claim under any of the causes of action in the Complaint. This entire paragraph appears to be completely gratuitous.

The first cause of action is brought by Plaintiff Barich against Defendant Dell'Osso, claiming violation of the Equal Protection Clause based on the January 8 and 22 events. Barich alleges a class of people who are not in attendance at the City Council meetings, and wish to have statements read into the record by a third party. (¶47.) Notably, the class as defined does not correspond to the group as described in paragraph 19, which purports to identify individuals who had someone speak on their behalf, but does not allege that people were permitted to read a prepared statement by a third party, or that individuals were allowed to speak twice. Ultimately, Barich alleges a class for which he provides no factual support; namely, people who seek to have someone present for them at a City Council meeting. No facts are alleged to sustain a claim based upon the class as described in this cause of action. Barich alleges the legal conclusion that he was intentionally treated differently from other people, and that there is no rational basis for his different treatment, but no facts are pled in support. (¶¶49, 51.)

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR        Case No. 21-cv-00034-EMC
MORE DEFINITE STATEMENT OF FIRST AMENDED COMPLAINT

Plaintiffs also focus upon one of the newly cited incidents, from September 10, 2019. (¶¶50, 51.) Plaintiffs allege that this was a situation of one individual being allowed to read a prepared statement for a second individual. (*Ibid*.) Plaintiff also attaches a transcript as Exhibit C to the Complaint. That individual, identified in the transcript as Mr. Ceremello, but who states in the transcript that he refuses to provide his name, does not announce himself to be presenting for a third party or for reading a prepared statement, but simply begins speaking about the issue he wished to address. According to the transcript, at some point during his presentation he states that he has a statement by a third party, and based upon the transcript, there is no identification of what, if any, of this statement is reading from this other person's note. In any event, the transcript does not indicate that this speaker sought to speak twice at the same meeting, nor that this person stated that they intended to use their time to simply read a third person's written statement. The transcript does no more than establish that individuals are allowed to speak once, and choose the content of their own statement. At best, the FAC suggests that someone can begin speaking and then, at some point, include a quotation from someone else as part of their presentation. None of this amounts to evidence of an equal protection violation. Finally, Plaintiffs allege, as they did in the original Complaint, physical and emotional injury, although again no facts pled support either of these allegations. (¶52.)

The second claim is brought by Plaintiff Alderman against Defendant Dell'Osso, and it is an allegation of violation of the First Amendment. This is based upon the January 8, 2019 and January 22, 2019 City Council meetings at which Plaintiff Alderman was not allowed to violate City Council rules and speak twice so that she could read Mr. Barich's s written statement. (¶55.) The Complaint goes on to allege that Defendant Dell'Osso made the decision to not let Alderman read Barich's statement on the advice of the City attorney at the meeting (¶55), but then makes the conclusory allegation that Defendant Dell'Osso's act was done willfully and intentionally, and with the intent to deprive Alderman of constitutional rights. (¶63.) Plaintiffs also make the conclusory allegation that the denial of Alderman's request to read Barich's statement was a

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR      Case No. 21-cv-00034-EMC
MORE DEFINITE STATEMENT OF FIRST AMENDED COMPLAINT

violation of her right to "freedom of speech" and was content based. (¶56.) Again, as clearly known by Plaintiffs and evasively pled in this Complaint, Alderman was in fact allowed to speak at both Council meetings, and did, in fact, speak at both Council meetings. Thus, Plaintiffs' insinuation that she was not allowed to speak is simply false. Alderman's true claim, that she should have a right to violate the time, place, and manner restrictions on speakers is purportedly justified by some constitutional right to not only speak on her own behalf, but to also separately, and additionally, speak on behalf of third parties and a proposed, although not explicitly stated, constitutional claim to simply read a written document created by a third party during this additional presentation. Plaintiff then mischaracterizes the City policy as not allowing "statements from others to be read at City Council meetings," and then makes reference again to the September 10, 2019 presentation. (¶57.) Plaintiffs are well aware of the City's true ordinance on the matter based upon the previous Motion to Dismiss, but insist upon alleging this claim of policy knowing that the true policy does not correspond to the allegation. Paragraph 58 then characterizes the September 10, 2019 presentation, purportedly by a Mr. Ceremello, as similar to Ms. Alderman's attempt to appear twice at the City Council meeting, including Ms. Alderman's statement that she wished to appear specifically for the purpose of reading a written statement. The Complaint then attempts to plead intent by a rhetorical flourish rather than allegation of fact. (¶60.) The Complaint then alleges the correctness of the transcripts of the several meetings, and attempts to compare the two incidents with Ms. Alderman to the incident with Mr. Ceremello by declaring that they constitute identical behavior, notwithstanding the fact that the transcripts belie this claim. (¶¶61, 62.) There is another conclusory allegation of physical and mental injury. (¶64.)

Claim three is brought by Alderman against Dell'Osso and is identified as an equal protection claim. The Complaint alleges a class of individuals who wish to orally present a written statement by a third party not present at the City Council meetings. (¶67.) The Complaint, in conclusory fashion, alleges that Defendant Dell'Osso regularly permitted other individuals to read statements from absent members of the public, and that there is no distinction between

Alderman and these other individuals. (¶68.) The Complaint again makes conclusory allegations of intent, and alleges that there is no rational basis for the distinction between Alderman and other members of the public. (¶69.) The allegations do not allege whether these other individuals were allowed additional appearances to present on their own behalf and also on behalf of someone else. Plaintiffs allege that the decision about Alderman's presentation was made by Defendant Dell'Osso, and was made as part of City policy, but denies that City policy existed based upon the purported events of the September 19, 2019 meeting. (¶¶69-74.) The Complaint then alleges that there is no rational difference between Alderman and the "similarly situated" individuals, although Plaintiff has not alleged the existence of any similarly situated people, who would be seeking to present twice, let alone on the second occasion for the sole purpose of reading a third party's written statement. (¶75.) Plaintiff goes on to make the conclusory, and fact free, allegations of physical and emotional injury of pain and suffering. (¶76.)

Claim four is brought by Barich and Alderman against the City of Cotati based upon a *Monell* theory. The Complaint alleges the legal conclusion that Dell'Osso was the final policy maker for the City of Cotati concerning the alleged acts. (¶81-82.) There is also an allegation that the acts were part of an unspecified policy that unspecified individuals at the City knew of and consented to. (¶83-84.) The Complaint then combines the legal conclusions about Dell'Osso and the City by alleging that the acts were done by Dell'Osso as mayor, and under unspecified customs, policies and practices. (¶85.) Plaintiffs allege that there are unidentified customs, practices, and procedures of the City which deny certain individuals First Amendment rights based upon the content of their speech, and refuse to accommodate people with disabilities. (¶86.) This latter allegation is peculiar as the ADA claim is brought against the City and there is no such thing as a "*Monell*" ADA claim. The Complaint then adds a series of further legal conclusions about the existence of unspecified policies known by unspecified supervisory personnel, and that "the constitutional and statutory violations" were caused by these unspecified polices, including a failure to train and supervise. (¶88.) In contrast, the previous Complaint alleged that the actions of

11

Defendant Dell'Osso were caused by an otherwise unspecified failure to supervise, train, monitor, and discipline the City's "agents," including Dell'Osso. There is a conclusory allegation of the City's actions being intentional, with no supporting facts alleged. (¶89.) There is also an allegation that the City acted with deliberate indifference, again without any factual support. (¶90.) The claim goes on to assert physical and emotional injury and pain and suffering, again without stating any factual allegation. (*Ibid*.) Finally, this claim alleges that there is no adequate remedy at law, and that the City must be enjoined from continuing its unlawful practices. (¶91.) This allegation is contradicted by Plaintiffs' claim for monetary damages in this case, along with the absence of any allegation of reoccurrence of any of the alleged acts in the last two years, or any allegation of future likelihood of occurrence.

Claim five is brought by Barich against the City of Cotati as an Americans with Disabilities Act claim. Plaintiff alleges that Title II of the ADA applies to the City of Cotati. (¶93.) Plaintiff Barich alleges that he suffers from partial hearing loss, and that he is entitled to participate in meetings at the City Council during public presentation sessions. (¶94.) Barich alleges that he was entitled to an accommodation, including an electronic hearing-assist device, at the March 27, 2019 meeting, but was "excluded" from participation because of his disability. (¶96.) Barich omits reference to the fact that two devices were provided, but did not work, as alleged earlier in the Complaint. (¶36.) Barich alleges that he was not accommodated by the City because some of the Council members were seated with their backs to him, no public address system was in use, and no "working" hearing-assistance device was provided. (¶96.) The Complaint makes the conclusory allegation that the City acted willfully and purposefully in preventing his participation in the Council meeting. (¶97.) The Complaint alleges that the City has purchased a new sound assistive device, but alleges that "there is no guarantee" that the device will be available for Plaintiff's use in the future. (¶98.) This allegation is part of the Complaint's attempt to complain that there is likelihood of reoccurrence, which Plaintiff follows up by concluding that there is uncertainty about the availability of a hearing-assist device in the future, and Plaintiffs'

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR                    Case No. 21-cv-00034-EMC
MORE DEFINITE STATEMENT OF FIRST AMENDED COMPLAINT

speculation that there may be a repeat of unspecified actions in order to spite Plaintiff. No facts are alleged anywhere to suggest intentional or spiteful acts. Thus, the Complaint alleges that the community room was selected in order to disadvantage Plaintiff, although no factual basis for that conclusion is stated. Rather, Plaintiff repeats the claim that his demand to have the meeting postponed or moved to a new location was declined. (¶99.) Plaintiff then states that he has not received a guarantee that future meetings would be held in the City Council chambers, although the Complaint does not allege that any further meetings were held in the community room where the incident occurred. (¶100.) Plaintiff then alleges the conclusion that the acts were done maliciously and recklessly, and that Plaintiff suffered physical and emotional injuries, among others. (¶102.)  No facts are alleged to support any of those assertions. Plaintiff alleges that the acts were done under an unspecified official policy or custom, that the City acted maliciously, and that he suffered physical and emotional injury and pain and suffering. (¶102.)

In the Prayer for Relief, Plaintiffs pray for injunctive relief to prohibit the prevention of Alderman from exercising her First Amendment right to participate in City Council meetings and to deny Barich and Alderman equal protection. There is a prayer for "affirmative relief" of accommodation of Barich's disability at City Council meetings. There is an undifferentiated request for compensatory and exemplary damages, as well as a request for attorneys' fees and cost of suit.

## **LEGAL ARGUMENT**

### **The Allegations of Events Before January 8, 2019 Should be Stricken**

The Complaint in this action was filed in January, 2021. The general statute of limitations on claims under 42 U.S.C section 1983 is two years. *Maldonado v. Harris* (9th Cir. 2014) 370 F.3d 954-955. Any allegations concerning events predating this anniversary are too old to be the basis of a cause of action in this litigation, and therefore should be stricken. These include the allegations in paragraphs ¶22 (from 2014), ¶23 (from 2006), and ¶25 (from 2017).

Furthermore, these allegations have no logical relationship to any of the claims by the

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR          Case No. 21-cv-00034-EMC
MORE DEFINITE STATEMENT OF FIRST AMENDED COMPLAINT

Plaintiffs. None of the allegations involve the named Defendant, Mr. Dell'Osso, and have no relationship to the claims about Alderman speaking for an absent Barich at a City Council meeting. Paragraph 22 involved a purported act by the City's Chief of Police towards Barich, and an alleged comment by a trial court judge in a case which settled (and thus rendered no actual judgment or finding of fact.) (¶22.) Another involved a verbal dispute between private citizens, in 2006, including Plaintiff Barich. (¶23.) The "then-Mayor" purportedly told these private citizens fighting with each other at a Council meeting to "knock it off or take it outside." *Ibid.*

Plaintiffs allege criticism of them at unspecified times, and some public comment by City Council members during a public meeting in 2017. (¶¶24-25.) Such comments by Council members are themselves protected First Amendment speech upon which these Plaintiffs could not assert a claim. See *Mulligan v. Nichols* (9th Cir. 2016) 835 F.3d 983, 989. In any event, there is no allegation of any violation of Barich's civil rights during these events.

Taken together, Plaintiffs have alleged stale and entirely unrelated events which further none of the claims in this action, and are clearly asserted for the improper purpose of attempting to disparage the City and others. Because these allegations do not relate to the operative issues of the Complaint, they should be stricken.

The Court did not rule on this issue in its order granting the City's previous Motion to Dismiss.

**The Claims for Violation of the First Amendment Should be Dismissed or Clarified**

The First Amendment claim, brought solely by Plaintiff Alderman, appears in the second claim (for both the January 8, 2019 and the January 22, 2019 incidents). The claim is based upon the notion that Alderman was denied the "right to read Barich's statement." (¶55.) Although Plaintiffs know better, the FAC studiously avoids alleging that Alderman was not allowed to speak at all, but only asserts that her attempt to speak "as a representative" was not allowed. The Court is asked to take judicial notice of the fact that Ms. Alderman was, in fact, allowed to speak, but chose to speak on some other topic. Req. Jud. Notice of the minutes and video of the January

14

8 and 22 meetings. She sought to speak separately and additionally on behalf of Barich. *Ibid.* As shown in the video of the January 22 meeting, she submitted a speaker card for Mr. Barich, purported to have power of attorney to speak for Mr. Barich, and attempted to speak as Barich. *Ibid.* The Mayor asked the City Attorney for advice and she said such procedure was not allowed by the City Council rules, so the Mayor did not allow it. *Ibid.* The Court is asked to take judicial notice of the fact that the City of Cotati Council has enacted rules calling for individuals to make a single presentation, and disallowing attempts of people to "yield" their time to each other. Req. Jud. Notice of City Council Rules.

It should first be observed that there is no constitutional right for the public to present anything to a City Council. *Minnesota State Org. for Community Colleges v. Knight* (1984) 465 U.S. 271, 283 ("the constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy.") Where public comment is allowed, the City Council meeting is generally characterized as a "limited public forum" as opposed to a "public forum." *Ribakoff v. Long Beach* (2018) 27 Cal.App.5th 150, 173 (collecting federal cases on the limited public forum issue). As a limited public forum, City Council meetings are open to the public only for the limited purposes set forth by the Council for conducting municipal business, and can be subject to reasonable time, place, and manner restrictions, and even limits on the content of speech to the matters set forth on the agenda. *Id.* at 175.

The *Ribakoff* decision specifically dealt with a challenge to a limit of three minutes per speaker at a Council meeting. *Id.* at 171. The Court held that the state law controlling such proceedings specifically allowed for time limits and other restrictions upon public speakers.

Civil rights are personal, and people cannot assert rights on behalf of others. See *United States v. Ward* (9th Cir. 1992) 989 F.2d 1015, 1020 ("[Plaintiff] has no standing to assert First or Fifth Amendment rights of others.") Thus, Alderman does not, and cannot, assert any right on behalf of Mr. Barich, but is solely asserting her purported right to speak beyond time, place, and manner restrictions based solely upon the fact that she wishes to make the additional speech on

behalf of a third party. There is no recognized constitutional right to violate legitimate time, place, and manner restrictions by claiming to be acting vicariously.

**The Claims for Violation of Equal Protection Should be Dismissed or Clarified**

Based upon these two same incidents, on January 8 and 22, 2019, both Barich (Claim I) and Alderman (Claim III) claim violation of Equal Protection rights.

Barich asserts that the class in question is "individuals desiring to speak at City Council meetings but who are unable to attend and seek to have their statements read into the record by a third party." (¶47.) Alderman claims that the category is "individuals desiring to speak at City Council meetings to orally present a written statement by someone who is unable to attend." (¶67.) Plaintiffs attempt to fill in the gap in their previous pleading with their enumerated list in paragraph 19, which simply does not satisfy the pleading obligations to establish existence of the purported class. Paragraph 19 primarily references people appearing for corporate entities, not for individuals desiring to speak. Further, nothing in paragraph 19 alleges that any of the individuals actually identified had a desire to speak at the City Council meeting but were unable to attend. Indeed, paragraph 19 does not state that any of these people were not in attendance, let alone that they had any desire to have someone else speak for them. Furthermore, paragraph 19 does not state that any of these people prepared a written statement for a third party to recite. The sole attempt to conform to any part of the elements of the purported class is the September 2019 presentation by Mr. Ceremello, in which Mr. Ceremello appeared to speak on his own behalf, and ambiguously referenced some written statement by some third person, whose intent or motive is unspecified. The First Amended Complaint utterly fails to allege facts establishing the existence of the purported class, as required by this Court's order.

With respect to Barich, there is no allegation that he would not have been allowed to speak had he chosen to come to the City Council meeting. Barich is not claiming that he was not allowed to speak: rather, Barich is solely claiming that he was not allowed to force the City Council to have to listen to a third party read a written statement by him at a City Council

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR                    Case No. 21-cv-00034-EMC
MORE DEFINITE STATEMENT OF FIRST AMENDED COMPLAINT

1    meeting. The City Council rules provide, among other time, place, and manner restrictions, that

2    individuals wishing to present written statements may submit the statements, which will be

3    delivered to the clerk. Req. Jud. Notice and City Council Rules. (Rule IV(A)(5).) The rules

4    further provide that, while the written communications will become part of the record, "they will

5    not be read into the record at the City Council meeting." *Id.* at IV(A)(5). This is an entirely

6    reasonable time, place, and manner restriction, particularly given that the Council meeting is at

7    most a limited public forum. Note that the Complaint acknowledges that the statement was

8    accepted for inclusion in the record. (¶28.)

9        In essence, Barich is not complaining that he was prohibited from presenting his views to

10   the City Council. Rather, Barich is claiming that he was not allowed to present it in exactly the

11   form he preferred. This is not a legitimate Equal Protection claim, as Barich has no inherent right

12   to force the City Council to accept both a written statement and a verbal recitation of that written

13   statement. Furthermore, the characterization of the class is, at best, misleading. Barich claims that

14   there is no rational basis for letting other people "read statements," ignoring the fact that Ms.

15   Alderman used her opportunity to speak to the Council on her own behalf. As described above,

16   the FAC fails to allege that any of the other people, identified in paragraph 19, were "reading

17   statements," except for Mr. Ceremello, who referenced a statement by a third party within the

18   context of his own personal oral presentation. These allegations utterly fail to establish the

19   existence of the purported class.

20       With respect to Ms. Alderman, the issues are similar. She claims that she was not allowed

21   to present a written statement of a person who could not attend. In fact, she was allowed to speak

22   to the City Council and simply chose to address some other subject. See Req. Jud. Notice. What

23   she is actually claiming, although by evasively failing to allege relevant facts, is that she was not

24   allowed to violate reasonable time, place, and manner restrictions, by making multiple

25   appearances at the Council meeting, because she was "appearing on behalf of" herself on one

26   occasion and some other person on another occasion. Again, there is no Constitutional right to

27

28

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR          Case No. 21-cv-00034-EMC
MORE DEFINITE STATEMENT OF FIRST AMENDED COMPLAINT

1   make an additional appearance on a vicarious basis, and the time, place, and manner restrictions

2   on speech at the limited public forum of the City Council meeting constitute a rational basis for

3   limiting Ms. Alderman's presentation. She does not allege that others were allowed to speak

4   multiple times if they claimed that they were speaking for other people. She does not allege other

5   people wanted to attend but were unable to. She does not allege that any of the other people

6   appeared for the purpose of reading a written statement. She does not allege that any third parties

7   prepared a written statement for purposes of being presented at the Council meeting. Paragraph

8   19 simply does not allege any facts to support the class being asserted.

9   **The *Monell* Cause of Action Should be Dismissed or Clarified**

10          The Supreme Court has required that all complaints contain sufficient factual information to

11  "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly* (2007) 550

12  U.S. 544, 570. The Court has also held that "bare assertions" that "amount to nothing more than a

13  formulaic recitation of the elements of a [claim]" are not entitled to "presumption of truth," and

14  that a District Court, after disregarding "bare assertions" and conclusions, must "consider the

15  factual allegations in [a] Complaint to determine if they plausibly suggest an entitlement to relief"

16  as opposed to a claim that is merely "conceivable." *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 679-

17  80.

18          First, to be entitled to the presumption of truth, allegations in a Complaint … may
19          not simply recite the elements of a cause of action, but must contain sufficient
            allegations of underlying facts to give fair notice and to enable the opposing party
20          to defend itself effectively. Second, the factual allegations that are taken as
            true must plausibly suggest an entitlement to relief, such that it is not unfair to require
21          the opposing party to be subject to the expense of discovery and continued
            litigation.
22

23  *Starr v. Baca* (9th Cir. 2011) 652 F.3d 1202, 1216. These pleading requirements apply to an

24  allegation of policy or custom for a *Monell* type claim. *Hernandez v. Tulare* (9th Cir 2012) 666

25  F.3d 631, 637.

26          This Court found that the original Complaint was inadequate in factually alleging the

27

28

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR          Case No. 21-cv-00034-EMC
MORE DEFINITE STATEMENT OF FIRST AMENDED COMPLAINT

predicate to a *Monell* claim, and Plaintiffs have cured none of these defects. The *Monell* claim still fails to meet the pleading requirements in exactly the ways the Supreme Court sought to prohibit in the *Twombly* and *Iqbal* decisions. Plaintiffs offer only threadbare allegations of unspecified "policies and procedures," without any factual allegations of their contents or origins. Moreover, the FAC has not alleged a valid underlying constitutional violation. The *Monell* claim should be dismissed, stricken or clarified.

The FAC summarily alleges that Dell'Osso is the final policy maker, but is evasive about the basis for such alleged authority or the policy other than the claim that Dell'Osso would not permit Alderman to contravene restriction on Alderman's attempt to speak twice at two meetings. Moreover, the polices set forth in the Council Rules were adopted by the City Council, not merely the Mayor. What the FAC actually alleges is that Dell'Osso enforced a policy established by the City Council. Furthermore, as there is no legitimate foundational basis for the underlying constitutional claims, there could be no *Monell* claim.

**The Claims for Violation of the Americans with Disabilities Act Should be Dismissed or Clarified**

The Court previously found the allegations inadequate for this cause of action, and again the Amended Complaint completely fails to cure any of these defects. This claim is brought solely by Plaintiff Barich, for a single incident occurring on March 27, 2019. (¶95.) The FAC alleges that two City hearing-assist devices failed to operate properly, and the City refused to cancel or move the meeting. *Id.* at 77-78. Plaintiff also alleges that he was offered the opportunity to raise his hand should he actually experience difficulty hearing, but that he unilaterally rejected this offer and chose to leave the meeting. (¶42.) The FAC attaches a transcript of the meeting and the City has requested judicial notice of Mr. Barich's body cam video of the meeting. (RJN, ¶4.)

It is first worth noting that the City had attempted to accommodate Mr. Barich, but there was an equipment failure. Plaintiff Barich insisted that the only allowable recourse would be to move or completely cancel the meeting. However, the location, time, and date of meetings are

required, under state law, to be specified in advance of the meeting under the Brown Act. See Gov't. Code §54954; §54954.2(a)(1). Thus, the City is not allowed to simply move a meeting from place to place, or arbitrarily change the time or date of a meeting.

More importantly, the allegations of the FAC appear to be asserting that the Plaintiff is entitled to unilaterally declare the only allowable accommodations. In fact, Barich acknowledges that the City offered an alternative of having Mr. Barich simply raise his hand if he was having difficulty hearing anything so that further efforts could be made to ensure that Mr. Barich heard the proceedings. Mr. Barich refused to even attempt this accommodation, and unilaterally chose to disable himself from participating in the proceedings by choosing to leave them.

Furthermore, the Complaint identifies a single, isolated incident with respect to the alleged hearing impairment. This Court previously ruled that this is insufficient to support a claim for injunctive relief. The ADA ordinarily only allows for injunctive relief, and a single event in the absence of evidence that it would reoccur negates a request for injunctive relief. See *Midgett v. Tri-County Metropolitan Transit District* (9th Cir. 2001) 254 F.3d 846, 850. The *Midgett* decision involved a wheelchair-bound bus passenger who complained of occasional failure of the bus lift system and occasional improper driver actions. The Court indicated that an ADA claim could not be sustained for injunctive relief because it failed to establish the likelihood of reoccurrence.

> [T]hese occasional problems do not, without more, establish a violation of the ADA. At most, the evidence shows past violations of the ADA. It does not, however, support an inference that Plaintiff faces a real and immediate threat of *continued future* violations of the ADA in the absence of injunctive relief.

*Id.* at 850, emphasis in original.

Plaintiff strains, but fails, to allege any facts establishing the risk of reoccurrence of this incident. Plaintiff wildly alleges the possibility that the City will take some unspecified action to discriminate against him based upon his alleged disability, but no facts are alleged to support that speculation. Plaintiff alleges that there is no guarantee that further meetings will not be held in the community room, but does not allege that any have been held there since this isolated incident.

20

1  Plaintiff does allege that the City acquired new equipment since the time of the failure of the two

2  devices in question, creating a strong inference that there will not be a reoccurrence. Thus,

3  Plaintiff has added no facts which change the pleadings from those the Court found inadequate in

4  its prior ruling.

5      To claim more than injunctive relief, a claimant would need to establish "discriminatory

6  intent" under Title II. *Updike v. Multnomah County* (9th Cir. 2017) 870 F.3d 939, 950. Intentional

7  discrimination requires proof that the defendant acted with "deliberate indifference," which

8  requires both that knowledge of harm to a federally protected right is substantially likely, and a

9  failure to act upon that likelihood. *Id*. at 950-951. In the *Updike* matter, a hearing-impaired

10  criminal defendant did not have a sign language interpreter at the Court because of a

11  miscommunication with jail staff. The *Updike* Court held that no claim for compensatory

12  damages could be made. Here, Barich alleges that two hearing-assist devices failed to work, and

13  that the City would not violate the Brown Act by moving the meeting to another location or

14  indiscriminately rescheduling the agendized and noticed meeting. The City offered a reasonable

15  accommodation of having Mr. Barich actually attend the meeting and determine whether, in fact,

16  he was unable to hear the proceedings, and signal if there was actually a problem. Mr. Barich

17  chose to refuse to even attempt this process, and voluntarily chose to abandon the meeting. Under

18  these facts, no claim beyond injunctive relief could be sought even if there were a proper claim.

19      This Court has already held that no claim for compensatory damages could be made. The

20  Amended Complaint fails to meaningfully address the inadequacies the Court already found in

21  the Complaint.

22              **The Claim for Exemplary Damages Should be Dismissed or Clarified**

23      The FAC requests an award of exemplary damages in the prayer, but does not otherwise

24  specifically address this request for punitive damages. It is appropriate to dismiss claims for

25  punitive damages where the complaint fails to establish entitlement to recovery of such damages.

26  See *Opperwall v. State Farm Fire and Casualty Company* (N.D. Cal. 2018) 2018 WL 1243085,

27

28

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR          Case No. 21-cv-00034-EMC
MORE DEFINITE STATEMENT OF FIRST AMENDED COMPLAINT

*5.

Initially, a claim for punitive damages cannot be asserted against a public entity. See e.g., *City of Newport v. Fact Concerts, Inc.* (1981) 453 U.S. 247, 271, ("[A] municipality is immune from punitive damages under 42 U.S.C. §1983."); *Barnes v. Gorman* (2002) 536 U.S. 181, 190, (punitive damages not allowed under the ADA); and see Government Code §818. Thus, no exemplary damages can be asserted against Defendant Cotati.

With respect to Defendant Dell'Osso, the claims are solely based upon First Amendment and Equal Protection arguments relating to the January 8 and January 22 City Council meetings. "Punitive damages may be assessed in §1983 actions 'when Defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Castro v. City of Los Angeles* (9th Cir. 2015) 797 F.3d 654, 669 (quoting *Smith v. Wade* (1983) 461 U.S. 30, 56). Here, Plaintiffs have merely alleged that Dell'Osso would not allow Alderman to speak an additional time merely by asserting a vicarious representation of an absent person. Nothing in the Complaint demonstrates evil motive or intent or callous indifference to rights. Plaintiffs attempt to insinuate intent, but nowhere actually plead facts demonstrating any intent or malice in any of the actions alleged. At most, the FAC alleges that Ms. Alderman made her choice in what she chose to present to the City Council, and was not allowed to flout the restriction on presenting written statements by making an additional appearance before the Council to read a written statement by a third party. The allegations of the FAC simply will not support a claim for exemplary damages.

### The Requests for Injunctive Relief Should be Dismissed or Clarified

This Court found the allegations of the original Complaint inadequate to establish a risk of reoccurrence, and the Amended Complaint does not remedy this defect. As noted above, for the ADA claim, Plaintiffs have failed to allege a threat of reoccurrence of an isolated incident. Similarly, for First Amendment and Equal Protection claims, Plaintiffs allege two incidents from two years ago, and allege no facts establishing a risk of reoccurrence. In paragraph 19, Plaintiffs

22

NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR          Case No. 21-cv-00034-EMC
MORE DEFINITE STATEMENT OF FIRST AMENDED COMPLAINT

1   offer some entirely unrelated events which predate the subject events, and one event from

2   September of 2019. Plaintiffs offer nothing on the ADA claim other than the single isolated event

3   previously identified in the original Complaint. None of this suggests in any way the likelihood of

4   some future event, and the Complaint remains inadequate to sustain a request for injunctive relief.

5   Therefore, Plaintiffs lack standing to seek injunctive relief. See *Diamond v. Corazon* (N.D.

6   CA.2016) 2016 WL7034036, 4.

7                                    **CONCLUSION**

8         For the reasons set forth above, this motion should be granted in its entirety, without leave

9   to amend. Plaintiffs were given fair opportunity to cure the deficiencies in the original Complaint,

10  but failed to do so, and have demonstrated that their deficient claims cannot be cured.

11

12

13  Dated: May 14, 2021

                                    GIBBONS & CONLEY

14

15                          By: */s/ Peter Urhausen*
                                    PETER URHAUSEN, ESQ.
16                                  Attorney for Defendant, CITY OF COTATI and
                                    JOHN A. DELL'OSSO

17

18

19

20

21

22

23

24

25

26

27

28  NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, AND FOR          Case No. 21-cv-00034-EMC
    MORE DEFINITE STATEMENT OF FIRST AMENDED COMPLAINT