1
2
3
4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    GEORGE BARICH, et al.,                 Case No.  21-cv-00034-EMC

8                    Plaintiffs,            **ORDER GRANTING IN PART AND
                                            DENYING IN PART DEFENDANTS'**
9           v.                              **MOTION TO DISMISS, STRIKE, AND
                                            FOR A MORE DEFINITE**
10   CITY OF COTATI, et al.,                **STATEMENT**

11                   Defendants.            Docket No. 26

12

13

14          Plaintiffs George E. Barich and Laurie Alderman sued Defendants the City of Cotati

15   ("City") and John A. Dell'Osso, the Mayor of the City during the time in question, under 42

16   U.S.C. § 1983 for violations of their civil rights under the First Amendment's Freedom of Speech

17   Clause, Fourteenth Amendment's Equal Protection Clause, and the Americans with Disabilities

18   Act (ADA).

19          Pending before the Court is the Defendants' motion to dismiss, strike, and for a more

20   definite statement of the first amended complaint (FAC) pursuant to Federal Rules of Civil

21   Procedure 12(b)(6), 12(e), and 12(f).  *See* Docket No. 26 ("Second Mot. to Dismiss").  For the

22   following reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' motion.

                            I.      **BACKGROUND**

24   A.     Factual Background

25          Plaintiffs' claims relate to three separate incidents that occurred at public Cotati City

26   Council meetings held on January 8, January 22, and March 27, 2019.  The constitutional claims

27   relate to the January meetings, during which Ms. Alderman was not allowed to read a statement

28   from Mr. Barich into the record.  The ADA claim relates to the March meeting, where Mr. Barich

United States District Court
Northern District of California

was unable to participate because the electronic hearing-assist device provided by the City failed.

The Plaintiffs' FAC alleges as follows. Mr. Barich and Ms. Alderman are frequent attendees and speakers at Cotati City Council meetings. Docket No. 22 (FAC) ¶ 20. Mr. Barich, a former City Council member, often disagrees with the policies advanced by the City Council and over the years has engaged in "spirited debate with several council members." *Id.* Mr. Barich has been called both a "gadfly" and a "watchdog" by the local press. *Id.*

On January 8, 2019, Mayor Dell'Osso presided over a regularly scheduled City Council meeting. *Id.* ¶ 26. Mr. Barich, who was out of town and wished to be heard at the meeting, appointed Ms. Alderman as his "attorney-in-fact" to read a written statement into the record. *Id.* ¶ 27. During the meeting's public comment period, Ms. Alderman was not allowed to speak on behalf of Mr. Barich or to read his statement into the record. *Id.* ¶ 28. However, Mayor Dell'Osso accepted Mr. Barich's written statement for inclusion into the meeting's written record. *Id.*

On January 22, 2019, Mayor Dell'Osso presided over a regularly scheduled City Council meeting. *Id.* ¶ 29. Mr. Barich again appointed Ms. Alderman as his "attorney-in-fact" to present his testimony at the meeting. *Id.* ¶ 30. This time, Ms. Alderman filled out a speaker card for Mr. Barich. *Id.* When his name was called, Ms. Alderman presented herself and a notarized copy of a power of attorney granting her the authority to speak on Mr. Barich's behalf. *Id.* ¶ 30–31. Mayor Dell'Osso asked for the advice of the City Attorney, who stated that the City's rules do not allow for speakers to present a power of attorney and comment for someone else. *Id.* ¶ 31. In response, Ms. Alderman told Mayor Dell'Osso and the City Attorney that they were violating Mr. Barich's civil rights and that they should reconsider their decision not to let her read his statement into the record. *Id.* at 33. Mayor Dell'Osso did not allow Ms. Alderman to read the statement into the record. *Id.*

Plaintiffs assert that, to their knowledge, the City's rules prohibiting speakers from presenting a power of attorney to speak on behalf of someone else "have never been enforced with regard to anyone except Barich." *Id.* ¶ 31. *Id.* Plaintiffs also allege—as they did in their initial complaint—that "[m]embers of the public who cannot attend City Council meetings in person are *routinely* allowed to have representatives speak for them and to have their written statements read

into the record during the public comment period."  *Id.* ¶ 14, 18; *see also* Docket No. 1 ("Compl.")

¶ 14.  The FAC adds the following thirteen (13) "examples of meetings at which persons spoke for

others during the open comment period:"

> 03/10/10 Bob Haroch of Beyers-Costin for Colvin Group, seeking development applications approvals;
>
> 08/25/2015 Andrew Alderman for Laurie Alderman (Plaintiff);
>
> 08/25/2015 Mr. Scott, Attorney for the Stanleys;
>
> 10/27/2015 Mr. Scott for the Stanleys;
>
> 10/26/2016 Neil Randolph & Guy Chambers of Colvin Group;
>
> 03/28/2017 Neil Randolph of Colvin Group & Dave Brown of Adobe Associates;
>
> 05/09/2017 Dalene Whitcock for Colvin Group;
>
> 06/13/2017 Robin Miller of 116 Investors, LLC;
>
> 06/27/2017 Aksel Dregelid of David Taussig and Associates; Guy Chamber for Colvin Group;
>
> 09/12/2017 Nathan Perez for David Taussig and Associates;
>
> 06/12/2018 Nick Caston with Kaya Management & Alta Supply; Angelo Bertam with Eagle Eye, LLC; Craig Enyart, Representative for 7950 Redwood Dr.;
>
> 08/21/2018 Neil Randolph for Colvin Group;
>
> 09/10/19 Michael Ceremello (who did not identify himself before speaking) for Ourania Riddle, a resident of Dixon, regarding the choice to elect or appoint the City Clerk and City Treasurer.

*Id.* ¶ 19.  Many of the examples in this paragraph involve individuals speaking on behalf of

corporations or other entities, not on behalf of other individuals.  Some do involve speech on

behalf of individuals.  Moreover, the FAC alleges

> during the public comment section of the Council meeting held on September 10, 2019, just a few months *after* Dell'Osso denied Alderman the right to read Barich's statements into the record, Dell'Osso allowed an attendee, Michael Ceremello, to read a prepared statement of Ourania Riddle, who was not at the Council meeting.  Mr. Ceremello was able to read the statement from Ms. Riddle regarding the election of a City Clerk and City Treasurer versus appointing these positions, an issue that was not before the Council.  Dell'Osso did not raise the issue of whether Mr. Ceremello

was allowed to read the statement as he had done with Alderman at
the January meetings.

*Id.* ¶ 50 (emphasis added).  Therefore, according to the FAC, allowing Mr. Ceremello to speak on

behalf of Ms. Riddle but not Ms. Alderman to speak on behalf of Mr. Barich constitutes "disparate

treatment."  *Id.* ¶ 51.[1]

On March 27, 2019,[2] the City held a special meeting of the City Council.  *Id.* ¶ 34.  The

meeting was held in the community room at the Cotati police station rather than the City Council

chambers.  *Id.*  Mr. Barich, who suffers from progressive hearing loss and tinnitus, often requires

an electronic hearing-assist device at City Council meetings, which the City provides.  *Id.* ¶ 21.  A

week before the special meeting, Mr. Barich requested an electronic hearing-assist device for his

use at the meeting.  *Id.* ¶ 35.  The Cotati City Clerk assured Mr. Barich that he would be provided

with a hearing-assist device for the special meeting.  *Id.*

As promised, the City Clerk provided Mr. Barich an electronic hearing-assist device at the

outset of the meeting.  *Id.* ¶ 36.  However, the device did not function inside the police station's

community room.  *Id.*  The clerk gave Mr. Barich a second device that also did not function.  *Id.*

According to the FAC, "[i]t is undisputed that the City's hearing-assist devices could *never* work

in the community room, as they had to be connected to the public address system in the council

chambers next door in order to function."  *Id.* (emphasis added).  In fact, the City Attorney

confirmed as much to Plaintiffs' counsel via email.  *Id.* ¶ 43.  Plaintiffs therefore contend that no

public-address system was used at the special meeting because the community room did not have

one.  *Id.* ¶ 39.  According to Mr. Barich, "City Clerk Berges and City Planner Harries

acknowledged to Barich *before* the meeting that the hearing-assist devices were not working.

Barich asked that the Council be informed of the problem, but the meeting continued."  *Id.* ¶ 40

(emphasis added).  As a result, Mr. Barich alleges that he was "relegated" to the side of the room

with some of the City Council members facing away from him, making it "impossible" for him to

---

[1] The FAC attaches portions of the transcripts for the January 8, January 22, and September 10, 2019 City Council meetings.  *See* Docket Nos. 22-1 (FAC, Ex. A), 22-2 (FAC, Ex. B), and 22-3 (FAC, Ex. C).

[2] The FAC also attaches a portion of the transcript for the March 27, 2019 meeting.  *See* Docket No. 22-4 (FAC, Ex. D).

United States District Court
Northern District of California

follow along and participate in the discussion.  *Id.* ¶ 37–39.

During the special meeting's public comment period, Mr. Barich reminded the City Council of his hearing disability, informed them that the council was not accommodating his disability, and requested that the meeting be moved to the nearby council chambers where his hearing disability could be accommodated through the use of the public-address system.  *Id.* ¶ 41.  Mayor Dell'Osso denied Mr. Barich's request and suggested that he raise his hand and interrupt the meeting every time he was having trouble hearing the discussion.  *Id.* ¶ 42.  Mr. Barich replied to Mayor Dell'Osso that this was unreasonable.  *Id.*  Mayor Dell'Osso answered that Mr. Barich could either stay under the circumstances or leave.  *Id.*  Mr. Barich, unable to meaningfully participate, left the meeting.  *Id.* ¶ 43.

Based on these facts, Plaintiffs allege the City is taking advantage of Mr. Barich's disability to prevent him from participating in City Council proceedings in the community room, where the provided electronic hearing-assist devices do not work because of the lack of a public address system, thus denying him his right to full participation in the City Council's deliberations.  *Id.* ¶ 21.  The FAC admits that the City has purchased "a 'personal sound amplifier' that may be available for Barich to use at City Council meetings," but contends nonetheless that "there is no guarantee that this device will be available for him to use in the future."  *Id.* ¶ 98.

Included in the Plaintiffs' complaint are allegations related to three other incidents that are not directly at issue but are included to provide "historical context" for the City's conduct on the dates in question and to show "discriminatory intent."  *See* Docket No. 30 ("Opp'n") at 2.  Mr. Barich previously filed a civil rights action against the City and the City's Chief of Police, *see Barich v. Cotati and Michael Parish*, No. 3:15-CV-00350 VC (N.D. Cal. filed Jan. 24, 2015), related to an incident in 2014 where the City's Police Chief allegedly threatened to arrest Mr. Barich for exercising his First Amendment rights.  FAC ¶ 22.  The case settled in 2015, with the City paying Mr. Barich $50,000.  *Id.*  According to Plaintiffs, Judge Chhabria, who presided over that case, said he was shocked at the City's and its counsel's attitude toward the First Amendment.  *Id.*  The Court declined to order an injunction against the City but allegedly warned that further violation of Mr. Barich's First Amendment rights would result in harsh consequences for the

United States District Court
Northern District of California

City.[3]  *Id.*  In 2007, Plaintiffs allege John Moore, the husband of former Cotati Mayor Lisa Moore, said, "Barich, I'm going run you out of town!" at a City Council meeting.  *Id.* ¶ 23.  An argument followed during which then Mayor, Pat Gilardi, told Mr. Moore and Mr. Barich to "knock it off or take it outside."  *Id.*  In 2017, Mr. Moore, now a City Council member, asked Mr. Barich, "are you still a grower?" implying that Mr. Barich grew cannabis.  *Id.* ¶ 25.  On a second occasion, Mr. Moore called Mr. Barich a "money launderer" at a City Council meeting.  *Id.*  Mr. Barich denies both accusations.  *Id.*  Mr. Moore was duly appointed the Mayor of Cotati on December 8, 2020, replacing Mayor Dell'Osso.  *Id.*

Based on, *inter alia*, the above allegations, Plaintiffs raise five (5) causes of action:

(1) violation of Mr. Barich's right to equal protection under the Fourteenth Amendment against Mayor Dell'Osso (Claim 1);

(2) violation of Ms. Alderman's freedom of speech rights under the First Amendment at the January 8 and January 22 meetings against Mayor Dell'Osso (Claim 2);

(3) violation of Ms. Alderman's right to equal protection under the Fourth Amendment against Mayor Dell'Osso (Claim 3);

(4) unconstitutional policy, custom, or practice in violation of § 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the City (Claim 4) (the "*Monell* Claim"); and

(5) violation of Mr. Barich's rights under the ADA, 42 U.S.C. §§ 12101–12213, against the City (Claim 5).

B.      Procedural Background

Mr. Barich timely filed three separate claims under California's Government Tort Claims Act, Cal. Gov. Code §§ 810–998.3, with the City of Cotati on April 16, 2019.  *Id.* ¶ 9–11.  The

---

[3] In reference to the pervious federal lawsuit, Plaintiffs provide a case number but do not cite any court documents.  The Court reviewed the Docket and it does appear Judge Chhabria found that Mr. Barich's First Amendment rights were violated when the Chief of Police threatened to arrest Mr. Barich if he was recording their conversation.  *See Barich v. City of Cotati*, No. 3:15-CV-00350-VC, Docket No. 52 (Order Granting Mr. Barich's Mot. for Partial Summ. J. and Den. Defs.' Cross-Mot. for Summ. J.) 1:26–27 ("From these undisputed facts, it is clear that Chief Parish violated Mr. Barich's First Amendment rights.").  The Court did not see any warning from Judge Chhabria in the record.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    City's insurance carrier rejected all three claims by letter dated June 3, 2019.  *Id.* ¶ 11.  The letter

2    allegedly states that the claims were "rejected by operation of law."  *Id.*  Mr. Barich filed a fourth

3    supplemental claim related to the March 27, 2019 incident, specifically referencing the ADA, on

4    July 31, 2019.  *Id.*  On August 6, 2019, the City's insurer sent another rejection letter to Mr.

5    Barich, indicating that the fourth claim was also rejected by operation of law.  *Id.*

6           In addition, on July 17, 2019, within the six-month statute of limitations period, Mr. Barich

7    filed an ADA complaint with the U.S. Department of Justice, Civil Rights Division, Disability

8    Rights Section, regarding the March 27 incident.  *Id.* ¶ 12.  The Disability Rights Section elected

9    not to take any action on Mr. Barich's complaint, allegedly for lack of resources, on or about

10   November 1, 2019.  *Id.*

11          Plaintiffs filed the initial complaint with this Court on January 5, 2021.  *See generally*, *id.*

12   On February 12, 2021, Defendants filed their first motion to dismiss, *see* Docket No. 10 ("First

13   Mot. to Dismiss"), which the Court granted with leave to amend on March 30, 2021, *see* Docket

14   No. 21 ("First Mot. to Dismiss Order").  Plaintiffs filed their FAC on April 23, 2021.  *See* FAC.

15          On May 14, 2021, Defendants filed the pending motion to dismiss, strike, and for a more

16   definite statement along with a request for judicial notice.  *See* Second Mot. to Dismiss; Docket

17   No. 27 (Defs.' Req. for Judicial Notice ("Defs.' RJN")).  Plaintiffs filed an opposition to the

18   motion along with their own request for judicial notice.  *See* Docket Nos. 30 ("Opp'n"), 31 (Pls.'

19   Req. for Judicial Notice ("Pls.' RJN")).

20                                    **II.       LEGAL STANDARDS**

21   A.     Request for Judicial Notice

22          The Court may take judicial notice of matters that are either "generally known within the

23   trial court's territorial jurisdiction" or "can be accurately and readily determined from sources

24   whose accuracy cannot reasonably be questioned."  Fed. R. Evid.  201(b).  However, to the extent

25   any facts in documents subject to judicial notice are subject to reasonable dispute, the Court will

26   not take judicial notice of those facts.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.

27   2001) ("A court may take judicial notice of 'matters of public record' . . . [b]ut a court may not

28   take judicial notice of a fact that is 'subject to reasonable dispute.'") (first quoting *MGIC Indem.*

*Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986); then quoting Fed. R. Evid.  201(b)),

*overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

B.    <u>Motion to Dismiss</u>

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013)).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

C.    <u>Motion to Strike</u>

Before responding to a pleading, a party may move to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to the trial."  *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 624 (N.D. Cal. Oct. 14, 2011) (quoting *Whittlestone, Inc. v.*

*Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).  Motions to strike are generally disfavored. *See Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 879 (N.D. Cal. 2011); *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).  A motion to strike should only be granted if the matter sought to be stricken clearly has no possible bearing on the subject matter of the litigation.  *See Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ("'Immaterial matter' is that which has no essential or important relationship to the claim for relief or the defenses being pleaded."). Statements that do not pertain to, and are not necessary to resolve, the issues in question are impertinent.  *Id.*  If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion to strike.  *Platte Anchor Bolt*, 352 F. Supp. 2d at 1057.  Just as with a motion to dismiss, the court should view the pleading sought to be struck in the light most favorable to the nonmoving party.  *Id.*

## III.   REQUESTS FOR JUDICIAL NOTICE

Defendants request the Court to take judicial notice pursuant to Federal Rule of Evidence 201 of the following materials:

> (1) the official video and minutes of the January 8 and January 22, 2019 City Council meetings, Defs.' RJN ¶¶ 1–2;
>
> (2) the City Council's Policy 2017-02 (the "Policy"), *id.* ¶ 3;
>
> (3) a body camera video of the March 27, 2019 City Council meeting taken by Mr. Barich and posted on YouTube, *id.* ¶4; and
>
> (4) the official video and minutes of the twelve meetings during which the FAC alleges Mr. Del Osso allowed individuals to read statements on behalf of others; *id.* ¶¶ 5–16.

Plaintiffs do not oppose Defendants' request for judicial notice.  Instead, they file their own request asking the Court to take judicial notice of the City Council's Rules of Conduct (the "Rules").  *See* Pls. RJN ¶ 1.

Federal Rule of Evidence 201 allows a court to take judicial notice of facts that are "not subject to reasonable dispute because they: (1) are generally known within the trial court's

United States District Court
Northern District of California

1    territorial jurisdiction; or (2) can be accurately and readily determined from sources whose

2    accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)

3          First, the Court may take judicial notice of the video and minutes of the City Council

4    meetings because they are matters of public record.  *See Lee*, 250 F.3d at 690 (courts may "take

5    judicial notice of undisputed matters of public record," but generally may not take "judicial notice

6    of disputed facts stated in public record"); *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007)

7    (court took notice of prior lawsuits but refused to take notice of facts from plaintiff's deposition

8    because "the accuracy of the deposition excerpts . . . could be subject to reasonable dispute").

9    Courts in this district have taken judicial notice of similar video recordings and minutes of public

10   meetings  *See, e.g.*, *Bey v. City of Oakland*, No. 14-CV-01626-JSC, 2018 WL 1536649, at *2, n.1

11   (N.D. Cal. Mar. 29, 2018) (taking judicial notice of a video recording of an Oakland City Council

12   meeting); *Jonna Corp. v. City of Sunnyvale*, No. 17-CV-00956-LHK, 2017 WL 2617983, at *4

13   (N.D. Cal. June 16, 2017) (taking judicial notice of minutes from Sunnyvale City Council public

14   hearings); *Henneberry v. City of Newark*, No. 18-CV-01905-JCS, 2018 WL 3344543, at *6–7

15   (N.D. Cal. July 9, 2018) (taking judicial notice of municipal code provisions that outline when and

16   how members of the public can address Newark City Council).

17          Importantly, the Court can take judicial notice of the existence of these records, but not for

18   the truth of the statements within them.  *See Lee*, 250 F.3d at 689 ("A court may take judicial

19   notice of 'matters of public record' . . .  [b]ut a court may not take judicial notice of a fact that is

20   'subject to reasonable dispute.'" (first quoting *MGIC Indem. Corp.*, 803 F.2d at 504; then quoting

21   Fed. R. Evid.  201(b))).

22          Here, Defendants have only requested the Court take notice of the fact that Ms. Alderman

23   spoke on her own behalf at both City Council meetings, not for the truth of her statements.  The

24   Court does not need to weigh the contents of the video to take notice of the fact that Ms. Alderman

25   spoke at the City Council meetings.  Even if the Court did not take notice of the videos, the fact

26   that Ms. Alderman spoke at both City Council meetings is also represented in the meetings'

27   minutes and in the transcripts attached to the FAC.

28          Second, the Court can also take judicial notice without further authentication of the City

10

United States District Court
Northern District of California

Council's Policy and Rules because they are public records available on government websites, and if authentication is necessary, the City Clerk can testify to the authenticity of these documents. Defendants do not challenge authenticity.  *See, e.g.*, *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 (9th Cir. 2006) (affirming district court's grant of request for judicial notice of documents on file with the City Clerk of the City of Santa Monica and those accessible on Santa Monica's official website); *Gerristen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("Under Rule 201, the court can take judicial notice of '[p]ublic records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies.'" (quoting *Hansen Beverage Co. v. Innovation Ventures*, LLC, No. 08-CV-1166-IEG POR, 2009 WL 6597891 (S.D. Cal. Dec. 23, 2009)); *Michery v. Ford Motor Co.*, 650 Fed. App'x 338, 342 n.2 (9th Cir. 2016) (affirming district court's grant of request for judicial notice of the existence of documents available on a government website).

Third, and finally, the Court may take judicial notice of the body camera video Mr. Barich uploaded to YouTube because it is "information posted on certain . . . webpages that [Plaintiffs] referenced in the [FAC]."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Under the doctrine of incorporation by reference, it is proper for a court to consider materials or documents whose contents are alleged in the complaint when their authenticity is not questioned. *See In re Tesla, Inc. Secs. Litig.*, 477 F. Supp. 3d 903, 919 (N.D. Cal. 2020) (citing *Lee*, 250 F.3d at 688 and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)).  Here, Plaintiffs are not questioning the authenticity of the body camera video footage Mr. Barich uploaded to YouTube.

Accordingly, the Court **GRANTS** the parties' respective requests for judicial notice in full.

### IV.      MOTIONS TO DISMISS OR CLARIFY

A.      First Amendment and Equal Protection Claims (Claims 1 through 3)

Plaintiffs challenge Mayor Dell'Osso's decision not to allow Ms. Alderman to read a written statement from Mr. Barich into the record during the public comment period at two City Council meetings in 2019.  Plaintiffs assert First Amendment and equal protection claims.  FAC. ¶ 26–33.  Plaintiffs allege Mayor Dell'Osso's decision was "based solely on the content, and the

United States District Court
Northern District of California

1  source, of the testimony" and done "with the specific intent to deprive Alderman of her

2  constitutional rights." *Id.* ¶¶ 56, 63.  In support of their claims, Plaintiffs allege that they were

3  "intentionally treated differently from others similarly situated who were permitted to have their

4  statements read into the record." *Id.* ¶¶ 49, 69.

5       The Court granted Defendants' first motion to dismiss Plaintiffs' First Amendment and

6  equal protection claims because

7         Plaintiffs do not allege any specific instances where Mayor
          Dell'Osso (or his predecessors) allowed a *similarly situated*
8         *individual* to read a written statement into the record during a City
          Council meeting.  The assertion that this was done "routinely" is
9         conclusory.  *See* Compl. ¶ 14.  Absent non-conclusory allegations of
          such disparate treatment, Plaintiffs fail to state claim for First
10        Amendment viewpoint discrimination or equal protection disparate
          treatment.

11

12  First Mot. to Dismiss Order at 2 (emphasis added).  To cure the deficiencies of their viewpoint

13  discrimination and disparate treatment theories, Plaintiffs add to their FAC thirteen (13)

14  examples—going back to 2010—of other individuals being allowed to speak on behalf of others at

15  Cotati City Council meetings.  *See* FAC ¶ 19.

16       Defendants again move to dismiss Ms. Alderman's First Amendment viewpoint

17  discrimination claim by contending that she "was, in fact, allowed to speak, but *chose* to speak on

18  some other topic."  Second Mot. at 14 (emphasis added).  In other words, their argument is that

19  Ms. Alderman—unlike the speakers in the thirteen other instances referenced in paragraph 19—

20  "sought to speak *separately and additionally* on behalf of [Mr.] Barich."  Mot. at 15.  But the

21  January meetings' minutes and video, as well as the transcripts attached to the FAC, do not

22  establish that Ms. Alderman asked to speak "separately and additionally," *i.e.*, twice, at either of

23  the City Council meetings.   To the contrary, the transcript and video of the January 8 meeting

24  show only Ms. Alderman noting that she submitted Mr. Barich's written statement for the record

25  and then proceeding to speak on her own behalf about the lack of services for homeless people in

26  Cotati.  *See* FAC, Ex A; Defs.' RJN ¶ 1.  In fact, the transcript and video of the January 22

27  meeting shows Ms. Alderman complaining that the conversation about whether she would be

28  allowed to speak on behalf of Mr. Barich at the January 8 meeting was had "off camera."  *See*

12

1    FAC, Ex. B at 2–3 ("[Mr. Dell'Osso]:  Because I thought we discussed this last meeting too? [Ms.

2    Alderman]: We discussed it off camera.  We did not discuss it as a formal thing."); Defs.' RJN ¶ 2

3    (same).  This suggests that, as the FAC plausibly alleges, Ms. Alderman had no other choice but to

4    submit Mr. Barich's written statement and to speak on her own behalf at the January 8 meeting

5    *after* Mr. Dell'Osso refused to let her read Mr. Barich's statement altogether.  Similarly, the

6    transcript and video of the January 22 meeting shows Ms. Alderman asking to speak on behalf of

7    Mr. Barich at the onset of the public comment period.  FAC, Ex. B; Defs.' RJN ¶ 2.  It is only

8    after she is denied that opportunity that she proceeds to speak on her own behalf. *Id.*  There is

9    simply nothing in the record to suggest she wanted—let alone asked to—speak twice.

10           There is no support in the record, whatsoever, for Defendants' contention that Ms.

11   Alderman was free to read Mr. Barich's statement during her allotted time at either the January 8

12   or January 22 meetings.  Quite the opposite, when Ms. Alderman got up to speak on behalf of Mr.

13   Barich at the January 22 meeting, the City Attorney broadly advised Mr. Dell'Osso that "[y]our

14   rules do not allow for speakers to present a power of attorney and comment for someone else. . . .

15   If there is a writing, it can certainly be entered into the record, and you can certainly see it, but it

16   doesn't come under the public comment rules."  FAC, Ex. B at 3:16–25.  At no point did the City

17   Attorney—or any other official, for that matter—clarify that this "rule" did not apply if Ms.

18   Alderman chose to read Mr. Barich's statement during the time allotted to her.  In fact,

19   Defendants' contradict themselves because their argument to dismiss Plaintiffs' *Monell* claim

20   (addressed more fully below) is precisely that Mr. Dell'Osso is not liable because he had no the

21   Rules did not give him any discretion to allow Ms. Alderman to read Mr. Barich's statement

22   altogether.

23           Defendants also ask the Court to dispense of Plaintiffs' equal protection claims by arguing

24   that Plaintiffs were not treated differently than the persons referenced in paragraph 19 because

25   those people were "appearing for corporate entities, not for individuals desiring to speak."  Mot. at

26   16.  Defendants also try to distinguish the prior instances referenced in paragraph 19 by arguing

27   that none of those people were attempting to read someone else's written statement at a City

28   Council meeting.  *Id.* at 16–17.  These are unavailing distinctions because paragraph 19 contains

several examples of individuals speaking on behalf of other individuals. *See* FAC ¶ 19. For example, it alleges that Ms. Alderman's husband spoke on her behalf at the August 25, 2015 City Council meeting. *Id.* Similarly, a lawyer referred to as "Mr. Scott" allegedly spoke on behalf of his clients, "the Stanleys," at the August 25 and October 27, 2015 meetings. *Id.* Most importantly, several months *after* Ms. Alderman was prevented from reading Mr. Barich's statements, Mayor Dell'Osso allowed a man named Michael Ceremello to read a statement from another person named Rainer Riddle during the September 10, 2019 City Council meeting. *See id*; FAC, Ex. C at 3–4; Defs.' RJN ¶ 16.

In sum, Plaintiffs have cured the deficiencies in their initial complaint by adding non-conclusory allegations of disparate treatment. Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' First Amendment and equal protection claims because Plaintiffs have plausibly stated claims of viewpoint discrimination and disparate treatment. *See Giebel v. Sylvester*, 244 F.3d 1182, 1188 (9th Cir. 2001) (viewpoint discrimination occurs "when the government prohibits 'speech by particular speakers,' thereby suppressing a particular view about a subject" (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983) (Brennan, J., dissenting))); *Rosenbaum v. City & Cnty. of San Francisco*, 484 F.3d 1142, 1153 (9th Cir. 2007) ("To establish a discriminatory effect . . . the claimant must show that similarly situated individuals . . . were not prosecuted." (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996))).

B.    *Monell* Claim (Claim 4)

The Court dismissed Plaintiffs' *Monell* Claim in the initial complaint because Plaintiffs had failed to plausibly plead an underlying constitutional violation. First Mot. to Dismiss Order at 2. Even if Plaintiffs had pled a constitutional violation, however, the Court noted their *Monell* Claim failed because they did not "allege in non-conclusory terms that the City had a policy or custom of violating individuals' First Amendment and equal protection rights" or that "Mayor Dell'Osso is the final policymaker for the City." *Id.*

Plaintiffs' amended complaint mostly adds conclusory allegations that the city has a policy, custom, or practice of violating individuals' First Amendment or equal protection rights at

United States District Court
Northern District of California

14

1  the City Council meetings and that Mr. Dell'Osso is the final policy maker.  *See e.g.*, FAC ¶ 63

2  ("Dell'Osso's unlawful actions occurred as the result of an official policy or custom and were

3  done willfully, knowingly, and with the specific intent to deprive Alderman of her constitutional

4  rights."); *id.* ¶ 81 ("Dell'Osso was a final policy maker and had final policymaking authority from

5  the City of Cotati concerning the wrongful acts alleged herein."); *id.* ¶ 84 ("The City, by its

6  policy-making agents, servants, and employees, authorized, sanctioned and/or ratified Dell'Osso's

7  wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts

8  to continue."); *id.* ¶ 85 ("The acts complained of were carried out by Dell'Osso in his capacity as

9  Mayor under the customs, policies, usages, practices, procedures, and rules of the City."); *id.* ¶ 87

10  ("The existence of these unlawful de facto policies and/or well-settled and widespread customs

11  and practices is known to, encouraged, and/or condoned by supervisory and policy-making

12  officials of the City."); *id.* ¶ 102 ("In doing the acts alleged herein, which occurred as the result of

13  an official policy or custom, the City acted with malice and reckless indifference to Barich's

14  constitutional rights."). These threadbare allegations that merely track the elements of a *Monell*

15  claim are insufficient to plausibly allege *Monell* liability.  *See Dougherty v. City of Covina*, 654

16  F.3d 892, 900 (9th Cir. 2011) (dismissing "*Monell* and supervisory liability claims [that] lack[ed]

17  any factual allegations that would separate them from the 'formulaic recitation of a cause of

18  action's elements' deemed insufficient by *Twombly*" (quoting *Twombly*, 550 U.S. at 555)).

19          Plaintiffs' opposition, however, was filed with a request for judicial notice of the City

20  Council's Rules, which state that

21          The Mayor or Presiding Officer has authority and discretion to
preserve order at all Council meetings.  This includes the authority

22  to remove any person that presents a physical threat to any other
person in the Council meeting, or for conduct that disrupts the

23  meeting to prevent the orderly prosecution of the City's business.
The Presiding Officer also has the authority and discretion to

24  enforce these rules of the Council and to determine the order of
business.  The Presiding Officer shall have the authority to prevent

25  the misuse of the legitimate form of motions, the abuse of privilege
of renewing certain motions, or the obstruction of the business of the

26  City Council.  The Presiding Officer may preserve orderly business
by ruling such motions out of order.  In so ruling, the Presiding

27  Officer shall be courteous and fair and shall presume that the
moving party is making the motion in good faith.

28

See Docket No. 31-1 ("City Council Rules") at 4 (Section II.C.1).  This citation to the City

Council's Rules is enough to plausibly allege that Mr. Dell'Osso is the final decision maker

because he has final say as to who can speak during City Council meetings.  *Cf. Ass'n for L.A.*

*Deputy Sheriffs v. Cnty. of Los Angeles*, 648 F.3d 986, 994 (9th Cir. 2011) (concluding that

"the final decisionmakers" were "in Debs's case, the Commission, and in O'Donoghue's case, the

County and the Sheriff" because they decided whether to reconsider Debs's and O'Donoghue's

suspensions); *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1028 (9th Cir. 2000) ("In this case, the

parties concede the district attorney is the final decision-maker in determining whether to proceed

with a criminal prosecution.").  As such, for purposes of § 1983, Mayor Dell'Osso is acting "under

color of [the City Council's Rules]" and therefore on behalf of the City when he refused to let Ms.

Alderman speak.  42 U.S.C. § 1983.

Defendants argued in their papers and at oral argument that Mr. Dell'Osso was not the

"final *policy* maker" because he did not draft or enact the Rules, which he was required to enforce

and that supposedly do not allow for speakers to read other individual's written statements.  First,

*Monell* liability is not imposed on final *policy* makers, it is imposed on final "*decision* makers."

*See Ass'n for L.A. Deputy Sheriffs*, 648 F.3d at 994; *Weiner*, 210 F.3d at 1028.  Plaintiffs'

complaint is not that the Rules are facially unconstitutional, but that Mr. Dell'Osso's inconsistent

application of the Rules constitutes disparate treatment.  Therefore, he is the final "decision

maker" for purposes of deciding whether and how to apply the Rules to silence speakers during

the City Council's meetings.  Second, in any event, the "rule" Defendants' counsel cited at oral

argument does not prohibit speakers from reading other individual's written statements; it states

that "[s]peakers may not '*yield*' a portion of their allotted time to others."  City Council Rules at

16 (Section IV.G.6).  Ms. Alderman was not trying to "yield" her time to anyone, let alone Mr.

Barich, who was not even present at either of the January meetings.

Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' *Monell* Claim.

C.    ADA Claim (Claim 5)

The Court previously held that Plaintiffs lacked standing to seek injunctive relief for Mr.

Barich's alleged ADA violation because they "have not alleged the threat of any imminent future

harm." First Mot. to Dismiss Order at 3; *see also See Midgett v. Tri-Cnty. Metro. Transp. Dist. of Or.*, 254 F.3d 846, 850 (9th Cir. 2001) ("[O]ccasional problems do not, without more, establish a violation of the ADA. At most, the evidence shows past violations of the ADA. It does not, however, support an inference that Plaintiff faces a real and immediate threat of continued, future violations of the ADA in the absence of injunctive relief."). Plaintiffs unsuccessfully attempt to cure this deficiency by adding an allegation that, "[a]lthough the City has since purchased a 'personal sound amplifier' that may be available for Barich to use at City Council meetings, there is no guarantee that this device will be available for him to use in the future." FAC ¶ 98. Similarly, the FAC admits that "holding future meetings in the City Council Chambers which has a public address system would be an accommodation for Barich," but that "the City has not stated that it would do so." *Id.* ¶ 100. These entirely speculative allegations are insufficient to create standing to bring a claim for injunctive relief under the ADA.

Plaintiffs attach to their opposition a declaration from Robert B. Skye, an "expert" they hired to inspect the community room and the hearing-assist device the City has put in place. *See* Docket No. 32 ("Skye Decl."); Opp'n at 7–8. Mr. Skye declares that the hearing assist device "is not appropriate and will *never* provide an adequate accommodation in a typical meeting environment where the listener is not in the immediate vicinity of the persons peaking." *Id.* ¶ 4 (emphasis added). Even if that is true, there is no indication in the FAC or otherwise that the City intends to use the community room for future City Council meetings. In fact, at oral argument Defendants' counsel represented that City Council meetings have been held in the community room only five times in the last five years, that the City does not intend to use it again, and that if it did, it would make every effort to accommodate Mr. Barich. Based on these representations and the lack of any concrete evidence the violation will be repeated, particularly in view of this Court's ruling herein, the Court concludes the likelihood that City Council meetings will be held in the community room is insufficiently substantial to support standing for injunctive relief at this time. The Court would have to revisit this conclusion if the City decides to use the community room again and Plaintiff is unable to use the hearing device, as such a circumstance would indicate the Defendants' deliberate indifference to his rights under the ADA.

United States District Court
Northern District of California

1    The Court also dismissed Plaintiffs' claim for compensatory damages under the ADA

2    because they failed to allege that Defendants acted with "deliberate indifference."  First mot. to

3    Dismiss Order at 4 (quoting *Duvall v. Cnty of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001)).  The

4    Court concluded that "the failure of hearing aid devices given to Mr. Barich does not appear to

5    have been an intentional act designed to exclude him from participating."  *Id.*

6         To show "deliberate indifference," a plaintiff must plausibly plead "both knowledge that a

7    harm to a federally protected right is substantially likely, and a failure to act upon that . . .

8    likelihood."  *Updike v. Multnomah Cnty*, 870 F.3d 939, 950–51 (9th Cir. 2017) (quoting *Duvall*,

9    260 F.3d at 1139).  "When the plaintiff has alerted the public entity to his need for

10   accommodation (or where the need for accommodation is obvious, or required by statute or

11   regulation), the public entity is on notice that an accommodation is required, and the plaintiff has

12   satisfied the first element of the deliberate indifference test."  *Id.*  To meet the second prong, the

13   entity's failure to act "must be a result of conduct that is more than negligent, and involves an

14   element of deliberateness."  *Id.*; *see also Duvall*, 260 F.3d qt 1139 ("Because . . . events may be

15   attributable to bureaucratic slippage that constitutes negligence rather than deliberate action or

16   inaction, we have stated that deliberate indifference does not occur where a duty to act may simply

17   have been overlooked, or a complaint may reasonably have been deemed to result from events

18   taking their normal course.").  In sum, "[a] public entity may not disregard the plight and distress

19   of a disabled individual."  *Id.*

20        Plaintiffs' allegations in the FAC cure the deficiencies of the initial complaint and likely

21   satisfy both prongs of the deliberate indifference test.  Regarding the first prong, the FAC

22   plausibly alleges that Mr. Barich alerted the City to his need for an accommodation before and

23   during the March 27 meeting.  Compl. ¶ 35 ("A week before the special meeting, Barich went to

24   the Cotati City Clerk's office and requested that an electronic hearing-assist device be provided for

25   his use at the upcoming special meeting."); *id.* ¶ 41 ("Mr. Barich reminded the City Council of his

26   hearing disability, informed them that the council was not accommodating his disability").  It is

27   undisputed that Mr. Barich alerted the City of his need for an accommodation.

28        Regarding the second prong, the FAC plausibly alleges that Defendants *knew*—before the

March 27, 2019 meeting—that the hearing aids they offered Mr. Barich "could *never* work in the community room" because "they had to be connected to the public address system in the council chambers next door in order to function." FAC ¶ 36 (emphasis added); *see also id.* ¶ 43 ("Attorney for the City of Cotati in this case has confirmed via e-mail with opposing counsel that the hearing assist devices could never have worked inside the Police Station Community Room."). In fact, according to the FAC, the City Clerk and the City Planner "acknowledged to [Mr.] Barich *before* the meeting that the hearing-assist devices were not working. [Mr.] Barich asked that the Council be informed of the problem, but the meeting continued." *Id.* ¶ 40 (emphasis added). The FAC also alleges that Defendants

> had ample time to replace the non-functioning hearing devices or move the meeting next door. A notice could have been sent out, posted on the City's website, and/or posted on the door of the room itself, notifying the public that the meeting was moved next door in the Council chambers, where the City's electronic hearing-assist devices would work. None of this was done.

*Id.* ¶ 99.

These allegations are sufficient to plausibly allege that Defendants knew about the problems with Mr. Barich's hearing aids and nonetheless deliberately chose not to fix or mitigate the problem. In *Updike*, for example, the plaintiff "repeatedly requested a TTD, which was physically available at the jail, but was never provided such a device to assist making phone calls." 870 F.3d at 955. The Ninth Circuit concluded that these allegations were sufficient "evidence that the County denied him use of a TTD, creating a genuine issue of material fact on this issue. A trier of fact could conclude that the County acted with deliberate indifference in denying direct requests for this accommodation, which would permit Updike to use telephones, a service routinely made available to non-deaf inmates." *Id. See also id.* ("Although the district court attributed this to an 'unintentional oversight,' Updike has introduced evidence that County jail employees *were aware* of Updike's disability, *yet ignored his repeated requests* to turn on closed captioning." (emphasis added)). In *Duval*, the Ninth Circuit similarly held that factual issues precluded summary judgment on Duval's claims for monetary damages under the ADA because, "Duvall telephoned [an officer] to request videotext display, she failed to investigate whether such

display was available (despite already having witnessed a demonstration of that system in the courthouse), and she deliberately made the decision, instead, to 'accommodate' his disability by rescheduling the trial in Courtroom 269." 260 F.3d at 1140. What is alleged here—as in *Updike* and *Duvall*—cannot be fairly characterized as "an absence of effective communication and coordination" between City employees or an "unintentional oversight"; it was deliberate indifference. *Id.*

Finally, the Court cannot determine at the motion to dismiss stage whether Defendants provided Mr. Barich a "reasonable" accommodation by suggesting that he "simply raise his hand if he was having difficulty hearing." Mot. at 20. In *Updike*—which is again instructive—the district court dismissed Plaintiff's ADA claim based on the State's failure to provide an ASL interpreter during Mr. Updike's recognizance interview because the County argued "[the interviewer] was able to communicate effectively with Updike through written English and . . . through written notes." *See id.* at 956. The Ninth Circuit reversed, holding that "[w]hether the County's accommodation was sufficient requires sifting through a number of facts . . . a reasonable jury could conclude that written communication was not adequate to ensure that Updike could communicate as effectively as non-hearing-impaired individuals or that the County provided the appropriate accommodation." *Id.* (citations omitted). In other words, whether a purported accommodation was reasonable or appropriate is a question of fact not suitable for determination on the pleadings. A trier of fact might reasonably conclude that asking someone with a hearing impairment to raise their hand at a City Council meeting is not a reasonable accommodation for his disability.

Accordingly, taking the allegations in the FAC as true, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' claim for injunctive relief but **DENIES** Defendants' motion to dismiss Plaintiffs' claim for compensatory damages under the ADA.

D.   Prayer for Relief

1.   Exemplary or Punitive Damages

Defendants move to dismiss Plaintiff's prayer for exemplary or punitive damages. *See* MTD 21–22. The Court already ruled that exemplary or punitive damages are not available under

1   Title II of the ADA.  *See* First Mot. to Dismiss Order at 3 (citing *Barnes v. Gorman*, 536 U.S. 181,

2   192 (2002)).  Punitive damages are also unavailable under § 1983 for claims against a

3   municipality.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[W]e hold

4   that a municipality is immune from punitive damages under 42 U.S.C. § 1983").  Accordingly,

5   punitive damages are not available for the claims against the City.

6           Punitive damages are available against individual defendants—such as Mr. Dell'Osso—

7   under §1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or

8   when it involves reckless or callous indifference to the federally protected rights of others."  *Smith*

9   *v. Wade*, 461 U.S. 30, 56 (1983); *Castro v. City of Los Angeles* 797 F.3d 654, 669 (9th Cir. 2015).

10  Here, the Plaintiffs allege "Dell'Osso acted with deliberate indifference to Ms. Alderman's

11  constitutional rights."  Compl. ¶ 63.  Plaintiffs have also plausibly pled First Amendment

12  viewpoint discrimination and equal protection disparate treatment claims.  *See supra* Part V.A.

13  Therefore, depending on what showing they make after discovery at summary judgment or trial,

14  and assuming they prevail, Plaintiffs could convince a trier of fact to award them punitive

15  damages for these constitutional violations.

16          Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' prayer for

17  exemplary or punitive damages as it pertains to the alleged violation of their constitutional rights.

18  E.    Injunctive Relief

19          Plaintiffs have not pled an ADA claim that is redressable through injunctive relief.  *See*

20  *supra*, Part 5.C.  As for Plaintiffs' constitutional claims, "[t]he Supreme Court has repeatedly

21  cautioned that, absent a threat of immediate and irreparable harm, the federal courts should not

22  enjoin a state to conduct its business in a particular way."  *Hodgers-Durgin v. de la Vina*, 199 F.3d

23  1037, 1042 (9th Cir. 1999) (citing *O'Shea v. Littleton*, 414 U.S. 488 (1974); *Rizzo v. Goode*, 423

24  U.S. 362 (1976); *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983); *Lewis v. Casey*, 518 U.S. 343

25  (1996)).  Plaintiffs have shown that Barich's First Amendment rights were violated in 2014.

26  Compl. ¶ 22; *see also supra,* Part II(A) fn. 2.  However, "[p]ast exposure to illegal conduct does

27  not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by

28  any continuing, present adverse effects."  *O'Shea*, 414 U.S. at 495–96.  Plaintiffs have not brought

United States District Court
Northern District of California

21

plausible claims of additional violations, and even if they had, Plaintiffs have not alleged that the City has violated or attempted to restrict their rights since March 27, 2019.  Additionally, the Mayor who allegedly discriminated against the Plaintiffs has been replaced.  *Compl.* ¶ 25. Although the facts alleged show that Barich and the current Mayor, John Moore, have had arguments in the past, nothing alleged amounts to a constitutional violation.  *Id*. ¶ 23–25.  Put simply, Plaintiffs have not alleged facts that reasonably suggest they face a real or immediate threat of substantial or irreparable injury that would warrant injunctive relief.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' prayer for injunctive relief.

## V.      <u>**MOTION TO STRIKE**</u>

Defendants move to strike paragraphs 22, 23, and 25 from the complaint because the events described are past the statute of limitations and "too old to be the basis of a cause of action in this litigation," "have no logical relationship to any of the claims," and are "asserted for the improper purpose of attempting to disparage the City and others."  Second Mot. to Dismiss at 13– 14.  Plaintiffs argue in their opposition motion that the events described in the paragraphs in question show the City's past mistreatment of Mr. Barich and provide "historical context for the City's conduct on the dates in question, including discriminatory intent."  Opp'n at 2.

Motions to strike are generally disfavored and should only be granted if it is clear that the matter sought to be stricken has no possible bearing on the subject matter of the litigation. *Colaprico*, 758 F. Supp. at 1339; *see also Shaterian*, 829 F. Supp. 2d at 879.  Here, Plaintiffs have alleged intentional discrimination and are seeking an injunction against the City.  Past disagreements between Plaintiffs and members of the City Council could be relevant to Defendants' motivations and to the likelihood of future harm.  Defendants have therefore not shown that the alleged facts have "no possible bearing on the subject matter of the litigation."

Accordingly, the court **DENIES** Defendants' motion to strike.

///

///

///

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss or strike.

This order disposes of Docket No. 26.

**IT IS SO ORDERED**.

Dated: July 20, 2021

_____
EDWARD M. CHEN
United States District Judge