1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    GEORGE BARICH, et al.,                    Case No. 21-cv-00034-EMC

8                    Plaintiffs,

9            v.                                **ORDER DENYING DEFENDANTS'
                                               MOTION FOR SUMMARY
10   CITY OF COTATI, et al.,                   JUDGMENT**

11                   Defendants.               Docket No. 60

12

13

14          Plaintiffs George E. Barich and Laurie Alderman sued Defendants the City of Cotati

15   ("City") and John A. Dell'Osso, the Mayor of the City, under 42 U.S.C. § 1983 for violations of

16   their civil rights under the First Amendment's Freedom of Speech Clause, the Fourteenth

17   Amendment's Equal Protection Clause, and the Americans with Disabilities Act ("ADA").

18          Pending before the Court is the Defendants' motion for summary judgment. *See* Docket

19   No. 60; Docket No. 61 (Memorandum of Points and Authorities ISO Docket No. 60 ("MSJ")).

20   For the following reasons, the Court **DENIES** Defendants' motion for summary judgment.

21                        **I.       BACKGROUND**

22   A.     Factual Background

23          Plaintiffs' claims relate to three separate incidents that occurred at public City Council

24   meetings held on January 8, January 22, and March 27, 2019.  The constitutional claims relate to

25   the January meetings, during which Defendants prevented Ms. Alderman from reading a statement

26   from Mr. Barich into the record.  The ADA claim relates to the March meeting, during which

27   Defendants failed to provide Mr. Barich with functioning hearing-assist devices and refused to

28   change the meeting's time or location so that Mr. Barich could have access to such devices.

United States District Court

1      1.  <u>The January 8 and January 22, 2019 Public Meetings</u>

2      On January 8, 2019, Mayor Dell'Osso presided over a regularly scheduled City Council

3  meeting.  Docket No. 73 (Declaration of Laurie Alderman ("Alderman Decl.")) ¶ 19.  Mr. Barich,

4  who was out of town and wished to be heard at the meeting, appointed Ms. Alderman as his

5  "attorney-in-fact" to read a written statement into the record.  Docket No. 72 (Declaration of

6  George Barich ("Barich Decl.")) ¶¶ 13, 15.  In a discussion that occurred off the record, Mayor

7  Dell'Osso indicated he would not allow Ms. Alderman to read Mr. Barich's statement aloud

8  during the public comment period but would admit Mr. Barich's statement into the written record.

9  Alderman Decl. ¶ 25.  During the public comment period, Ms. Alderman described their "off-

10  camera discussion."  *Id.*; *see* Docket No. 27 (Defendants' Request for Judicial Notice ("Defs.'

11  RJN")), Ex. 1 (Official Video and Minutes of the January 8, 2019 City Council Meeting) at

12  26:35.  After attempting and being prohibited from speaking on Mr. Barich's behalf, Ms.

13  Alderman "considered the matter 'finished'" and proceeded to speak on her own behalf.

14  Alderman Decl. ¶ 22; Defs.' RJN, Ex. 1 (Official Video and Minutes of the January 8, 2019 City

15  Council Meeting) at 26:54.

16      Two weeks later, on January 22, 2019, Mayor Dell'Osso presided over another regularly

17  scheduled City Council meeting.  Alderman Decl. ¶ 27.  Mr. Barich again appointed Ms.

18  Alderman as his attorney-in-fact to present his testimony at the meeting.  *Id.*  Ms. Alderman filled

19  out a speaker card for Mr. Barich.  *Id.*  When Mr. Barich was called, Ms. Alderman indicated she

20  wanted to read his statement and was authorized to do so through limited power of attorney.

21  Alderman Decl. ¶ 28.  Mayor Dell'Osso asked the City Attorney for advice, who indicated that the

22  rules did not allow speakers to use power of attorney to speak on another's behalf during public

23  comment.  *Id.*  Plaintiffs were not aware of such rule or any instances of its prior enforcement.

24  Barich Decl. ¶ 19.  In response, Ms. Alderman told Mayor Dell'Osso and the City Attorney that

25  they were violating Mr. Barich's civil rights and asked them to reconsider their decision not to let

26  her read his statement into the record.  *Id.* ¶ 29.  Nonetheless, Mayor Dell'Osso did not allow Ms.

27  Alderman to read the statement into the record.  *Id*.  Later at that meeting, Ms. Alderman made a

28  statement on her own behalf.  Defs.' RJN, Ex. 2 (Official Minutes and Video of the January 22,

*United States District Court*

2019 City Council Meeting) at 1:50:27.

Plaintiffs state that "[m]embers of the public who cannot attend City Council meetings in person are *routinely* allowed to have representatives speak for them and to have their written statements read into the record during the public comment period." *Id.* (emphasis added). Plaintiffs offer the following thirteen examples of meetings at which persons spoke for others during the open comment period:

- 03/10/2010 Bob Haroch of Beyers-Costin for Colvin Group, seeking development applications approvals;

- 08/25/2015 Andrew Alderman for Laurie Alderman (Plaintiff);

- 08/25/2015 Mr. Scott, Attorney for the Stanleys;

- 10/27/2015 Mr. Scott for the Stanleys;

- 10/26/2016 Neil Randolph & Guy Chambers of Colvin Group;

- 03/28/2017 Neil Randolph of Colvin Group & Dave Brown of Adobe Associates;

- 05/09/2017 Dalene Whitcock for Colvin Group;

- 06/13/2017 Robin Miller of 116 Investors, LLC;

- 06/27/2017 Aksel Dregelid of David Taussig and Associates; Guy Chamber for Colvin Group;

- 09/12/2017 Nathan Perez for David Taussig and Associates;

- 06/12/2018 Nick Caston with Kaya Management & Alta Supply; Angelo Bertam with Eagle Eye, LLC; Craig Enyart, Representative for 7950 Redwood Dr.;

- 08/21/2018 Neil Randolph for Colvin Group;

- 09/10/2019 Michael Ceremello (who did not identify himself before speaking) for Ourania Riddle, a resident of Dixon, regarding the choice to elect or appoint the City Clerk and City Treasurer. (19:05-22:18)

*Id.* ¶ 5.

2.    The March 27, 2019 Public Meeting

On March 27, 2019, the City held a special meeting of the City Council.  Barich Decl. ¶ 22; Docket No. 65 (Declaration of John Dell'Osso ("Dell'Osso Decl.")) ¶ 1.  The meeting was

United States District Court

held in the community room at the Cotati police station rather than in the City Council chambers. Barich Decl. ¶ 22; Docket No. 66 (Declaration of Lauren Berges ("Berges Decl.")) ¶ 1.  Mr. Barich, who has progressive hearing loss and tinnitus, has often requested and received electronic hearing-assist devices at City Council meetings.  Barich Decl. ¶ 9.  A week before the special meeting, Mr. Barich requested an electronic hearing-assist device for the meeting.  *Id.* ¶ 22.  The City Clerk Lauren Berges assured Mr. Barich that he would be provided with one for the special meeting.  *Id.* ¶ 23.

As promised, Ms. Berges provided Mr. Barich an electronic hearing-assist device at the outset of the meeting.  *Id.* ¶ 24.  However, the device did not function inside the police station's community room.  *Id.*  Ms. Berges then gave Mr. Barich a second device that also did not function.  *Id.*  Before the meeting began, Mr. Barich informed Ms. Berges that the hearing-assist devices were not working, and she alerted other city officials.  Berges Decl.  ¶¶ 4–5.  Mayor Dell'Osso was also aware that Mr. Barich's hearing assist devices were not functioning before he started the meeting.  Dell'Osso Decl. ¶ 1.

The meeting immediately opened with a public comment period.  *Id.* ¶ 1.  Mr. Barich spoke, reminding the City Council of his hearing disability, indicating that he was not being accommodated, and requesting that the meeting be moved to the nearby council chambers where his hearing disability could be accommodated through the use of the public-address system. Barich Decl. ¶ 29.  Mayor Dell'Osso denied Mr. Barich's request and suggested that he raise his hand and interrupt the meeting every time he was having trouble hearing the discussion.  *Id.* ¶ 30.  Mr. Barich replied to Mayor Dell'Osso that this was unreasonable.  *Id.*  Mayor Dell'Osso answered that Mr. Barich could either stay under the circumstances or leave.  *Id.*  Shortly after, Mr. Barich left the meeting.  *Id.* ¶ 31.

B.   Procedural History

Plaintiffs filed the initial complaint with this Court on January 5, 2021.  Docket No. 1 ("Compl.").  Plaintiffs alleged five claims for violations based on: (1) Equal Protection Clause (Mr. Barich against Mayor Dell'Osso); (2) freedom of speech (Ms. Alderman against Mayor Dell'Osso on January 8, 2019); (3) freedom of speech (Ms. Alderman against Mayor Dell'Osso on

4

1   January 21, 2019); (4) Equal Protection Clause (Ms. Alderman against Mayor Dell'Osso); (5)

2   *Monell* claim (Mr. Barich and Ms. Alderman against the City); and (5) ADA (Mr. Barich against

3   the City).  Compl. ¶¶ 37–81.  Defendants filed their first motion to dismiss, Docket No. 9 ("First

4   MTD"), which the Court granted with leave to amend, Docket No. 21 ("First MTD Order").

5        Plaintiffs amended their complaint on April 23, 2021.  Docket No. 22 ("FAC").

6   Defendants filed another motion to dismiss.  Docket No. 26 ("Second MTD").  The Court denied

7   the motion to dismiss the Equal Protection and *Monell* claims.  Docket No. 37 ("Second MTD

8   Order").  The Court granted the motion to dismiss the ADA claim for injunctive relief but allowed

9   the claim for compensatory damages to survive.  *Id.* at 20.  Lastly, the Court denied the motion to

10  dismiss the prayer for exemplary or punitive damages as to individuals but dismissed the prayer

11  for injunctive relief.  *Id.* at 22.

12       Since the Court's decision, the parties have produced new evidence, including the

13  depositions of Ms. Alderman and Mr. Barich, as well as the declarations of Ms. Berges, Mr.

14  Barich, and Ms. Alderman.  Docket No. 63, Exhs. A–C; Docket No. 64–67, 72–73.

15       Defendants filed a motion for summary judgment.  Docket No. 61 ("MSJ").  Defendants

16  included a request for judicial notice in support of the motion.  Docket No. 62 ("RJN").

17  Following oral argument, Plaintiffs filed a Sur-Reply Brief.  Docket No. 86 ("Sur-Reply");

18  Docket No. 87 ("Response to Sur-Reply").  The motion is now pending before this Court.

19                    **II.    LEGAL STANDARD**

20  A.    Request for Judicial Notice (Fed. Rule of Evid. 201(b))

21       The Court may take judicial notice of matters that are either "generally known within the

22  trial court's territorial jurisdiction" or "can be accurately and readily determined from sources

23  whose accuracy cannot reasonably be questioned."  Fed. R. Evid.  201(b).  However, to the extent

24  any facts in documents subject to judicial notice are subject to reasonable dispute, the Court will

25  not take judicial notice of those facts.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.

26  2001) ("A court may take judicial notice of 'matters of public record' . . . [b]ut a court may not

27  take judicial notice of a fact that is 'subject to reasonable dispute.'") (first quoting *MGIC Indem.*

28  *Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); then quoting Fed. R. Evid.  201(b)),

*United States District Court* (vertical text, left margin)

1    *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

2    B.    Motion for Summary Judgment (Rule 56)

3          Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment

4    [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and

5    the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue of fact is

6    genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.

7    *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  "The mere existence of a

8    scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could

9    reasonably find for the [nonmoving party]."  *Id.* at 252.  At the summary judgment stage, evidence

10   must be viewed in the light most favorable to the nonmoving party and all justifiable inferences

11   are to be drawn in the nonmovant's favor.  *See id.* at 255.[1]

12         Where a defendant moves for summary judgment based on a claim for which the plaintiff

13   bears the burden of proof, the defendant need only point to the plaintiff's failure "to make a

14   showing sufficient to establish the existence of an element essential to [the plaintiff's] case."

15    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

16                    **III.    REQUEST FOR JUDICIAL NOTICE**

17         Alongside its motion for summary judgment, Defendants request the Court to take judicial

18   notice of several documents pursuant to Federal Rule of Evidence 201.  Notedly, the Court

19   previously took judicial notice of the same documents in determining the second motion to

20   dismiss.  *See* Defs.' RJN; Second MTD Order, at 9–11.  Specifically, these materials consisted of:

> 1.    the official video and minutes of the January 8, 2019 City
>       Council meeting, Defs.' RJN ¶¶ 1–2;
>
> 2.    the official video and minutes of the January 22, 2019 City
>       Council meeting, *id.*;
>
> 3.    the City Council's Policy 2017-02 (the "Policy"), *id.* ¶ 3;

---

[1] Evidence may be presented in a form that is not admissible at trial so long as it could ultimately be capable of being put in admissible form.  *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) ("Even the declarations that do contain hearsay are admissible for summary judgment purposes because they 'could be presented in an admissible form at trial'").

United States District Court

4.     a body cam video of the March 27, 2019 City Council meeting taken by Mr. Barich and posted on YouTube, *id.* ¶ 4;

5.     the official video and minutes of the March 10, 2010 meeting, *id.* ¶ 5;

6.     the official video and minutes of the August 25, 2015 meeting, *id.* ¶ 6;

7.     the official video and minutes of the October 27, 2015 meeting, *id.* ¶ 7;

8.     the official video and minutes of the October 25, 2016 meeting, *id.* ¶ 8;

9.     the official video and minutes of the March 28, 2017 meeting, *id.* ¶ 9;

10.     the official video and minutes of the May 9, 2017 meeting, *id.* ¶ 10;

11.     the official video and minutes of the June 13, 2017 meeting, *id.* ¶ 11;

12.     the official video and minutes of the June 27, 2017 meeting, *id.* ¶ 12;

13.     the official video and minutes of the September 12, 2017, *id.* ¶ 13;

14.     the official video and minutes of the June 12, 2018, *id.* ¶ 14;

15.     the official video and minutes of the August 21, 2018, *id.* ¶ 15; and

16.     the official video and minutes of the September 10, 2019, *id.* ¶ 16.

Second MTD Order at 9; Defs.' RJN, 1–16.

Plaintiffs do not oppose Defendants' request for judicial notice. Instead, they file their own request for judicial notice of the official video of the City's July 27, 2021 City Council Meeting. *See* Docket No. 75 ("Pls. RJN ISO Opp. to MSJ").

This Court takes judicial notice of Defendant's sixteen documents and Plaintiff's one document. Federal Rule of Evidence 201 allows a court to take judicial notice of facts that are "not subject to reasonable dispute because they: (1) are generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose

accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  The Court may take judicial

notice of matters of public record if the facts are not subject to reasonable dispute.  *See Lee*, 250

F.3d at 688–89.  Courts in this district have taken judicial notice of city council minutes and

agendas when their authenticity and accuracy are undisputed.  *See Henneberry v. City of Newark*,

CV-18-01905-JCS, 2018 WL 3344543, at *7 (N.D. Cal. July 9, 2018) (declining to take judicial

notice of city council meeting agenda and minutes where their authenticity was questioned); *but*

*see Vincent v. City of California City*, CV-18-549-LJO (JLT), 2018 WL 3524621, at *3 (E.D. Cal.

July 20, 2018) (determining that "judicial notice is proper of a City Council meeting's agenda as a

public record whose accuracy is not in dispute").

      Here, the parties do not dispute the authenticity or legitimacy of the materials submitted.

The City Council meeting minutes, videos, and policies are available through the City of Cotati's

official website.  Moreover, the parties use these materials to show that statements were made

(*e.g.,* that Mr. Barich informed City officials that his hearing aid device was not functioning

properly, etc.) rather than to prove the truth of the matter asserted in those statements (*e.g.,*

whether Mr. Barich's hearing aid device *actually* was not functioning properly).  Accordingly, the

Court grants the parties' requests for judicial notice.

## IV.      <u>MOTION FOR SUMMARY JUDGMENT</u>

A.    <u>Equal Protection Claims</u>

      Plaintiffs assert that Mayor Dell'Osso's decision to prohibit Ms. Alderman from reading a

written statement from Mr. Barich into the record during the public comment period at two City

Council meetings in 2019 violated the Equal Protection Clause and the First Amendment.  FAC ¶¶

26–33.  For the reasons discussed below, the Court denies Defendants' motion for summary

judgment.

      While courts have held that "[g]overnment action that suppresses protected speech in a

discriminatory manner may violate both the First Amendment and the Equal Protection Clause,"

the analysis for both claims in many circumstances may be "essentially the same."  *Dariano v.*

*Morgan Hill Unified Sch. Dist.*, 767 F.3d 764, 779–80 (9th Cir. 2014) (citation omitted).

      Under First Amendment principles, city council meetings are considered limited public

fora. *See Kindt v. Santa Monica Rent Control Bd*., 67 F.3d 266, 271 (9th Cir. 1995). As such, city councils may impose time, place, and manner restrictions on speech so long as they are reasonable and viewpoint neutral. *Id.* "'Content discrimination' occurs when the government chooses the subjects that may be discussed, while 'viewpoint discrimination' occurs when the government prohibits speech by particular speakers, thereby suppressing a particular view about a subject." *Giebel v. Sylvester,* 244 F.3d 1182, 1188 (9th Cir. 2001) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 59 (1983) (Brennan, J., dissenting)) (cleaned up).

Under the Equal Protection Clause of the Fourteenth Amendment, "all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 439 (1985); *Clark v. Cal.*, 123 F.3d 1267, 1270 (9th Cir. 1997). Laws alleged to have violated the Equal Protection Clause are subject to strict scrutiny when they discriminate against a suspect class, such as a racial group, *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003), or when they discriminate based on any classification but impact a fundamental right, such as the right to vote, *Reynolds v. Sims*, 377 U.S. 533, 562 (1964), or speech, *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011). Laws are subject to intermediate scrutiny when they discriminate based on certain other suspect or quasi-suspect classifications, such as gender. *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 723 (1982). All other laws are subject to rational basis review. *Fitzgerald v. Racing Ass'n*, 539 U.S. 103, 106–07 (2003). While Equal Protection claims are usually brought by a member of a protected class, an individual plaintiff can establish an Equal Protection claim based on a "class of one." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*

In this case, the gravamen of Plaintiff's complaint is his treatment compared to other similarly situated speakers. The unequal treatment is best assessed under Equal Protection doctrine as opposed to First Amendment, given the lack of a conventional viewpoint discrimination claim here (*i.e.* there is no allegation that Defendants sought to deny Plaintiff his right to speak at the hearing on the basis of his viewpoint on any particular subject).

9

1    Plaintiffs have presented sufficient evidence to create a triable issue of fact as to whether

2    Defendants treated Mr. Barich and Ms. Alderman differently from similarly situated speakers in

3    violation of the Equal Protection Clause.  There is evidence of at least thirteen individuals who

4    were permitted to speak on behalf of others during the public comment period at City Council

5    meetings without issue.  *See* Defs.' RJN, 1–16.  Based on this evidence alone, viewed in a light

6    most favorable to Plaintiffs, a reasonable jury could find that Plaintiffs were intentionally treated

7    differently from others similarly situated.

8    To be sure, the parties dispute the extent to which Ms. Alderman and Mr. Barich are

9    "extremely similar" to others.  Barich Decl. ¶¶ 6–7; Alderman Decl. ¶¶ 5–6.  For example, the

10   parties dispute whether Ms. Alderman—like other community members—attempted to use her

11   own time slot to speak for Mr. Barich or whether she attempted to use two time slots to speak for

12   herself and Mr. Barich.  MSJ at 9:5–6.  Relatedly, the parties dispute whether Mr. Barich granted

13   Ms. Alderman the authority to speak on his behalf, or whether he granted her power of attorney to

14   speak for an additional time slot.  *Id.*  The parties also dispute whether Ms. Alderman knew she

15   could have used her time slot to speak on Mr. Barich's behalf.  MSJ at 14:21–24.  These disputes

16   underscore the factual nature of the inquiry regarding the disparate treatment allegedly suffered by

17   Mr. Barich.

18   Second, Plaintiffs have presented sufficient evidence to create a triable issue of fact as to

19   whether there is a rational basis for the differences in treatment between Plaintiffs and other

20   similarly situated individuals.  The City's choice to deny Ms. Alderman the opportunity to speak

21   on Mr. Barich's behalf may have been rational because, as the City argues, its rules limit speakers

22   to only one three-minute time slot and Ms. Alderman attempted to speak twice in two slots.

23   However, there is also evidence that undermines a rational basis for the disparate treatment—for

24   instance, if the City denied Ms. Alderman the opportunity to read Mr. Barich's statement

25   regardless of whether she intended to use a second time slot, or if other similarly situated

26   individuals spoke on behalf of absent third parties using two time slots.  This credibility

27   determination of whether it was rational for the City to enforce its rules in Plaintiffs' case cannot

28   be decided on summary judgment.  *See Anderson,* 477 U.S. at 255 (finding that credibility

1    determinations should be made by the trier of fact, not by the court on a motion for summary

2    judgment).

3            Thus, the Court denies Defendant's motion for summary judgment on the Equal Protection

4    claim.

5    B.    ADA Claim

6            Mr. Barich asserts an ADA claim based on Defendants' alleged failure to provide a

7    reasonable accommodation.  Defendants argue that the Court should grant summary judgment

8    because no evidence suggests that the City or Mayor Dell'Osso acted with deliberate indifference

9    to Mr. Barich's rights and because Mr. Barich rejected Mayor Dell'Osso's proposed reasonable

10   accommodation.  MSJ at 17:15–16, 20–22.  This Court disagrees.

11           A plaintiff may establish a claim under Title II of the ADA upon showing that he was

12   excluded from participating in or denied the benefits of a program's services or otherwise

13   discriminated against based on his disability.  42 U.S.C. § 12132; *Updike v. Multnomah Cnty.,* 870

14   F.3d 939, 950–51 (9th Cir. 2017).  Public entities have a duty to ensure effective communications

15   and must give deference to a disabled person's personal choice of aid and service.  *Updike,* 870

16   F.3d at 950 (citing 28 C.F.R. Pt. 35, App. A).  However, a public entity is not required to

17   accommodate if it demonstrates that requested accommodation would impose an undue financial

18   or administration burden.  *Id.*  Moreover, "compensatory damages are not available under Title II

19   absent a showing of discriminatory intent."  *Ferguson v. City of Phoenix,* 157 F.3d 668, 674 (9th

20   Cir. 1998), *as amended* (Oct. 8, 1998); *see Duvall v. Cnty. of Kitsap,* 260 F.3d 1124, 1138 (9th

21   Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001).  To show intentional discrimination, a

22   plaintiff must show that a defendant acted with "deliberate indifference," which requires "both

23   knowledge that a harm to a federally protected right is substantially likely, and a failure to act

24   upon that . . . likelihood."  *Id.* at 950–51.  Here, Plaintiffs have presented sufficient evidence such

25   that a reasonable jury could find that the City intentionally discriminated and did not satisfy its

26   duty to accommodate.

27           First, Plaintiffs sufficiently show that Defendants knew that harm to a federally protected

28   right was substantially likely.  It is undisputed that Mr. Barich alerted City officials and Mayor

United States District Court

11

Dell'Osso of his need for an accommodation.  *See* Berges Decl. ¶ 1 ("Prior to the March 27, 2019

City Council strategic planning session . . . George Barich requested a hearing assist device . . .").

Prior to the meeting, Ms. Berges and other City officials may not have known that the two devices

offered to Mr. Barich would not work.  Docket No. 63, Exh. C (Stipulation of Undisputed Fact).

But when the devices were turned on, resulting in static, Ms. Berges realized that the devices

obviously did not function in the room.  After that moment, there is sufficient evidence for a finder

of fact to conclude that Defendants became aware that harm to Mr. Barich's federally protected

right was substantially likely to occur absent a reasonable accommodation that would allow Mr.

Barich to participate in the public hearing.  Mr. Barich expressly informed the Mayor and City

officials that the hearing-assist devices were not functioning properly and that he was unable to

hear effectively.  *See Updike,* 870 F.3d at 951 ("When the plaintiff has alerted the public entity to

his need for accommodation (or where the need for accommodation is obvious, or required by

statute or regulation), the public entity is on notice that an accommodation is required, and the

plaintiff has satisfied the first element of the deliberate indifference test.").  Thus, a reasonable

jury could find that the first prong of the *Updike* test is met.

To satisfy the second prong of the *Updike* test, Plaintiffs must show that the City failed to

act upon the substantial likelihood of a violation of Plaintiffs' federal rights.  *See Duvall*, 260 F.3d

at 1137 ("To prevail under the ADA, [Plaintiff] must show that the accommodations offered by

the County were not reasonable, and that he was unable to participate equally in the proceedings at

issue.").  The Court considers whether Mr. Barich could effectively participate in the hearing and

whether Defendants provided a reasonable accommodation.  *See Updike*, 870 F.3d at 956 (finding

that in determining whether a public entity's failure to provide auxiliary aid was a result of

deliberate indifference, the district court should have focused on whether the plaintiff could

effectively communicate and whether the public entity provided a reasonable accommodation, not

whether the services were actually denied).  Under the ADA:

> A public entity shall furnish appropriate auxiliary aids and services
> where necessary to afford an individual with a disability an equal
> opportunity to participate in, and enjoy the benefits of, a service,
> program, or activity conducted by a public entity.

28 C.F.R. § 35.160(b)(1); *Duvall*, 260 F.3d at 1136. There is no evidence suggesting that the City or Mayor Dell'Osso failed to accommodate Mr. Barich's needs leading up to the meeting.[2] But once it became evident that the hearing devices did not work, the crucial question becomes whether Mr. Barich was afforded a reasonable accommodation and, if not, whether Defendants were deliberately indifferent in failing to provide such accommodation.

There is sufficient evidence to create a triable issue as to whether Defendants' proposed accommodation was reasonable. Mayor Dell'Osso rejected Mr. Barich's proposed accommodations to move the meeting and suggested that Mr. Barich raise his hand every time he could not hear or understand something that was said. Barich Decl. ¶ 30. Determining whether an accommodation is reasonable and enables effective communication depends on several factors, including "the nature, length, and complexity of the communication involved, and the context in which the communication is taking place." *Updike,* 870 F.3d at 956 (citing C.F.R. § 35.160(b)(2)). Here, the meeting room was configured such that several city officials were seated with their backs facing Mr. Barich, making it difficult for him to hear them or see whether they were speaking. Barich Depo., 52:10–17. While Defendants argue that Mr. Barich could hear from where he was seated because he was able to converse with Mayor Dell'Osso from his position in the room, this assessment requires credibility and fact-specific determinations that are improper for summary judgment. *See Anderson,* 477 U.S. at 255 (finding that credibility determinations should be made by the trier of fact, not by the court on a motion for summary judgment); *Duvall*, 260 F.3d at 1137 (finding that an individual with a hearing-related disability needed an accommodation because he had more difficulty following a conversation in which he

---

[2] The parties do not dispute that the City clerk oversees reasonable accommodations for City meetings: "The Cotati City Clerk is responsible for making reasonable accommodations for City meetings, including accommodating various prior requests from the Plaintiffs and others. At a strategic planning session on March 28, 2019, in addition to accommodating Plaintiff Alderman's request for a table, the Cotati City Clerk provided two functioning electronic hearing-assist devices, previously used in the City Council Chambers, to Plaintiff George E. Barich for use in the Police Station Community Room, believing they would work in that room. Both devices powered on, but neither device amplified sound at that meeting. After the meeting, the Cotati City Clerk learned that the devices had radio frequency receivers configured to work with the public address system in the City Council Chambers, and therefore did not work in the Police Station Community Room." Docket No. 63, Exh. C (Stipulation of Undisputed Fact).

1    was not a participant because he could not control the pace of the conversation).  Additionally,

2    given the seating configuration, City officials may not have been able to see Mr. Barich raise his

3    hand.  *Id.* 52:10–17.  Mr. Barich knew that meetings sometimes lasted two hours in length and was

4    told that this one lasted for nearly three hours.  Barich Decl. ¶ 30.  Asking Mr. Barich to follow

5    complex multi-party conversations without a hearing-assist device, out of view from some City

6    officials, for nearly three hours, could be understood as unreasonable.  But a jury could also find

7    that the City's decision was mere bureaucratic oversight, not deliberate indifference to Mr.

8    Barich's ADA rights.  *See Duvall*, 260 F.3d at 1139 ("Because . . . events may be attributable to

9    bureaucratic slippage that constitutes negligence rather than deliberate action or inaction, we have

10   stated that deliberate indifference does not occur where a duty to act may simply have been

11   overlooked, or a complaint may reasonably have been deemed to result from events taking their

12   normal course.").  This leaves triable issues of fact on which a reasonable jury could determine

13   that Mr. Barich could not fully participate in the meeting and that Mayor Dell'Osso's proposed

14   accommodation was unreasonable.[3]

15       Mayor Dell'Osso rejected Mr. Barich's request that the meeting be moved to a location or

16   time where he would have hearing-assist devices.  Barich Decl. ¶ 24.  Mr. Barich's request was

17   arguably reasonable.  Defendants argue they could not grant Mr. Barich's requested

18   accommodation because it would conflict with the Brown Act's requirements, which allegedly

19   precluded Mayor Dell'Osso from moving or postponing the special meeting without advance

20   notice.  Response to Sur-Reply, 2:12–17.  Under the Brown Act, holding a special meeting

21   requires at least 24 hours prior notice of the meeting's time and place.  *See* Government Code §

22   54956(a).  However, the Brown Act also states that noticed meetings can be continued, even "to a

23   time less than 24 hours after the time specified in the . . . notice of hearing" if notice of the

24   continuance is "posted immediately following the meeting at which the order or declaration of

25   continuance was adopted or made."  Government Code § 54955.1.  The City certainly could have

26

27   ───────────────
     [3] The fact that Mr. Barich left the meeting before trying Mayor Dell'Osso's proposed
28   accommodation is irrelevant to whether the accommodation was reasonable.  Indeed, before he
     left, Mr. Barich already voiced his disagreement with the accommodation by saying it that he was
     having significant difficulty hearing.  Barich Decl. ¶ 30.

United States District Court

1   immediately continued the meeting to a later date and posted a notice of the continuance,

2   providing an opportunity for the City to find functioning hearing-assist devices, or extend the

3   range of the speaker system, or modify the seating arrangement in the room, or book a different

4   room altogether.  Moreover, the Brown Act expressly calls for compliance with the ADA, and all

5   agendas must include a provision indicating "how, to whom, and when" individuals with

6   disabilities who need "auxiliary aids or services" can request such aid to participate in the public

7   meeting.  Government Code § 54954.2, 54954.2(a)(1).  There is thus a viable question whether

8   Defendants could have moved or postponed the special meeting without offending the notice

9   requirement.

10  C.     Qualified Immunity

11         Defendants argue that qualified immunity shields government officials performing

12  discretionary functions from civil damages liability if their actions could reasonably have been

13  thought to be consistent with the constitutional rights they are alleged to have violated.  *Anderson*

14  *v. Creighton,* 483 U.S. 635, 638 (1987).  If Mayor Dell'Osso is entitled to qualified immunity, the

15  Court must grant summary judgment on the constitutional claim.  But this Court has previously

16  stated that qualified immunity does not protect public officials when the plaintiff alleges an

17  intentional discrimination claim that, if proven, would clearly constitute a constitutional violation.

18  First MTD Order at 2:22–3:6 (citing *Metro Display Advert., Inc. v. City of Victorville*, 143 F.3d

19  1191, 1195–96 (9th Cir. 1998); *Flores v. Pierce*, 617 F.2d 1386, 1392 (9th Cir. 1980)).  Here,

20  Plaintiffs have alleged intentional discrimination in respect to his class-of-one equal protection

21  claim.  *See* Compl. ¶¶ 46, 51, 57, 71.  Therefore, a qualified immunity defense is not available to

22  resolve the Equal Protection disparate treatment claim.  *See Flores*, 617 F.2d at 1392 ("The

23  constitutional right to be free from such invidious discrimination is so well established and so

24  essential to the preservation of our constitutional order that all public officials must be charged

25  with knowledge of it.  We hold, moreover, that once a defendant is shown to have acted with

26  intent to discriminate based on racial or ethnic hostility, such intent constitutes the malicious

27  intention to cause a deprivation of constitutional rights that is inconsistent with the subjective state

28  of mind required for the defense of good faith immunity.").  The Court denies the motion for

United States District Court

15

1    summary judgment based on Defendants' qualified immunity arguments.

2    D.    _Monell_ Claim

3         Local governments can be sued for constitutional violations caused by their policies and

4    customs under § 1983.  *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978).  Under § 1983, a

5    municipal government can be held liable if a plaintiff can demonstrate that a deprivation of a

6    federal right occurred as a result of a "policy" of the local government's legislative body or of

7    local officials with "final policymaking authority" over the decision in question.  *Id.* at 692; *St.*

8    *Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).  Defendants move for summary judgment on the

9    *Monell* cause of action, arguing that there are no viable constitutional violations remaining if the

10   Court grants their motion for summary judgment on the First Amendment and Equal Protection

11   claims.

12        This Court previously denied Defendants' motion to dismiss Plaintiffs' *Monell* claim and

13   held that:

14            For purposes of § 1983, Mayor Dell'Osso is acting "under color of
             [the City Council's Rules]" and therefore on behalf of the City when
15           he refused to let Ms. Alderman speak.

16   Second MTD Order at 16:25.  Defendants have not presented any new facts or arguments to

17   suggest otherwise.  And as explained above, the Court denies summary judgment on Plaintiffs'

18   constitutional claims.  Thus, the Court denies Defendant's motion for summary judgment on the

19   *Monell* claim.

20                                  **V.        CONCLUSION**

21        For the aforementioned reasons, the Court **DENIES** Defendants' Motion for Summary

22   Judgment.

23        This order disposes of Docket No. 60.

24        **IT IS SO ORDERED**.

25

26   Dated: December 9, 2022

27                                              _____

28                                              EDWARD M. CHEN
                                                United States District Judge
                                                16

United States District Court