UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE BARICH, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF COTATI, et al.,<br><br>　　　　　　Defendants. | Case No. 21-cv-00034-EMC<br><br>**FINAL PRETRIAL CONFERENCE ORDER** |

## I.    <u>TRIAL DATE AND LENGTH OF TRIAL</u>

The jury trial shall begin on Monday, February 6, 2023. Trial shall commence that day and run up to 5:00 p.m. Jury selection shall take place on the first day. Counsel shall be present in the Courtroom at 8:00 a.m. to discuss any anticipated disputes. The Court strongly discourages side bars. The Court intends to seat eight jurors.

Trial shall last from 8:30 a.m. to 2:00 p.m. on each day, except for Thursdays, which are dark. On all trial days counsel shall be present in the Courtroom at 8:15 a.m. to discuss any matters requiring resolution prior to commencement of trial at 8:30 a.m. Each session will last 90 minutes. Breaks will be 15-20 minutes.

The Court will impose a vaccination requirement on jurors. The parties indicated their agreement with this at the pretrial conference. The jurors will be socially distanced. All trial participants, including jurors and counsel, will be required to wear masks except for the testifying witness and questioner. The parties and their counsel shall certify they and their witnesses are either fully vaccinated or have tested negative on a rapid COVID test immediately before entering the courtroom.

The trial shall last for four days. Each side will have 8 hours of trial time present their evidence (on direct and cross), including voir dire, opening statements, and closing argument. Any discovery sought to be admitted must be read (or played if video) into evidence.

Parties are scheduled to participate in settlement negotiations with Judge Spero on January 5, 2023 and are urged to settle this case.

## II. ADVANCED NOTICE OF WITNESSES AND EXHIBITS

Each party shall provide two court days (48 hours excluding weekends) in advance for notice of witnesses and exhibits to be called each trial day. The Court reserves the authority to exclude witness for non-compliance.

All objections to witnesses and exhibits must be filed with the Court at least one court day (24 hours) before the witness is scheduled to testify. The Court will address objections at 8:00 a.m. on the following day. All objections should be provided in writing and filed with the Court, and a courtesy copy should be given to chambers immediately.

Should a party fail to have enough witnesses to complete the trial day, the Court shall charge the surplus time remaining on that day against the party's total allotted time. For instance, if a party concludes a witness's examination with an hour remaining in the day and is not prepared to call another witness, then the Court will subtract that hour from the party's allotted hours.

## III. WITNESSES

A. Plaintiffs

Plaintiffs have identified the following individuals as witnesses they may call in their case-in-chief. *See* Docket No. 90 Exh. B.

(1) George Barich (Plaintiff)

(2) Laurie Alderman (Plaintiff)

(3) John Dell'Osso (Defendant)

(4) Robert B. Skye (expert)

(5) Jeffery B. Larsen (expert)

B. Defendants

Defendants have identified the following individuals as witnesses they may call in their

case-in-chief. *See* Docket No. 90 Exh. C.

(1) Laurie Alderman (Plaintiff)

(2) George Barich (Plaintiff)

(3) John Dell'Osso (Defendant)

(4) Damien O'Bid

(5) Robin Donoghue

(6) Lauren Berges

(7) J.P. Harries

(8) Scott Huber (expert)

(9) Michael Parish

## IV.    MOTIONS IN LIMINE

A.    Plaintiff's Motion in Limine No. 1 (Docket No. 92)

Plaintiffs request that the Court exclude expert testimony provided by Defendant's expert and attorney Mr. Scott Huber, specifically his statements that:

- Ms. Alderman "did not attempt to utilize her own time slot to read the comments of Mr. Barich;"
- "Plaintiff Alderman was not prevented in any way from speaking as she desired during her allotted time slot at the January 8 and 22, 2019 City Council meeting;"
- "Alderman made no attempt to read Plaintiff Barich's comments during her allotted time slot;"
- "The behavior of the City Council and City staff in relation to the Plaintiffs was in accordance with the customary and common practice of public agencies in California during public meetings;" and
- "Plaintiff Barich declined to engage in the process to find an acceptable resolution with the City of Cotati or its staff members to find alternative reasonable accommodations as required by the ADA."

Docket No. 92 Exh. A (Expert Report of Scott Huber ("Huber Report")). Plaintiffs argue that an attorney cannot masquerade as an expert to testify about his interpretation of events that are videotaped and the state of mind of those featured in the recording. Docket No. 92 (P's Motion in Limine No. 1 ("P's MIL No. 1")) at 2 (citing *Norse v. City of Santa Cruz*, 629 F.3d 966, 979 (9th

3

Cir. 2010) (en banc)). Plaintiffs further argue that Mr. Huber's conclusions about the substance of the video recordings—that Ms. Alderman did not ask or try to speak twice—contradict this Court's earlier Order Denying D's Motion to Dismiss. P's MIL No. 1 at 1 (citing Docket No. 37 (Order Denying D's MTD)).

Defendants argue that Mr. Huber's expert testimony is reliably based on the video recordings, as well at Plaintiffs' depositions and Mayor Dell'Osso's deposition. D's Opp. to P's MIL No. 1 at 3. Defendants also argue that Mr. Huber is not bound that the characterization of the video recording set forth in the complaint or in the Court's Order Denying D's Motion to Dismiss. D's Opp. to P's MIL No. 1 at 3.

The Court denies Plaintiff's motion in limine to exclude Mr. Huber's expert testimony on the common customs, practice, and rules of public agencies like the City Council. Mr. Huber is qualified as an expert under Rule 702 and has demonstrated a sufficiently reliable basis for his expert opinion "on facts or data in the case that the expert has been made aware of or personally observed" under Rule 703, including his experience in training and working with city councils. In particular, he may testify consistent with his report that:

> . . . As is common at public meetings, a party may speak during a public meeting on any matter that is not listed on the agenda, provided the subject is within the subject matter jurisdiction of the public agency. A person may speak for themselves or for the benefit of another person. However, the speaker is only allotted one time slot to speak. It is the custom and practice of every public agency with which I am familiar to allow a person only one time slot to speak. . . . I am not aware of any public agency in California that allows someone to speak for a third party during time allotted to the third party, and also to speak again on the same agenda item during a time slot allotted to the individual. Further, a person may not speak multiple times for other people on the same agenda item. In addition, public agencies do not allow individuals to share their time or give it to another person.

However, to the extent Mr. Huber seeks to testify that "[i]t is my professional opinion that the City Council and staff members acted in a manner that is consistent with the custom and practice of other public agencies in the conduct of public meetings," Huber Report ¶ 12, he must do so not based on his assessment and interpretation of the evidence from the hearings at issue, a matter which is within the province of the jury and for which Mr. Huber adds no particular

4

expertise – any such opinion must be framed as a hypothetical.

As to the ADA, provided that Defendants lay a foundation as to Mr. Huber's training or experience with hearing-related ADA accommodations, Mr. Huber may opine on common reasonable accommodations provided by cities where hearing-related barriers are encountered. *See, e.g.*, Huber Report ¶ 14 ("Common alternatives in practice by public agencies are to relocate someone to a location where they can hear the speakers, for individuals to speak loudly, and to turn off I-IV AC and other building equipment to prevent mechanical noise.").

However, Mr. Huber is not permitted to draw, comment on, draw inferences from, or make factual conclusions about what occurred at the recorded City meetings or the state of mind of Mr. Barich or Ms. Alderman with respect to the denial of permission to read Mr. Barich's statement or on the ADA issue. As noted above, those are matter within the province of the jury. *Res. Def. Council v. Rodgers*, No. CIV-S-88-1658 LKK, 2005 WL 1388671, at *1 n.2 (E.D. Cal. June 9, 2005) ("Motions in limine address evidentiary questions and are inappropriate devices for resolving substantive issues.")); *C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008) ("[A] motion in limine should not be used to resolve factual disputes or weigh evidence."). Mr. Huber has no special expertise to interpret as a factual matter the events in the video recording. Thus, Mr. Huber's statements such as that Ms. Alderman "did not attempt to utilize her own time slot to read the comments of Mr. Barich," "Plaintiff Alderman was not prevented in any way from speaking as she desired during her allotted time slot at the January 8 and 22, 2019 City Council meeting," "Alderman made no attempt to read Plaintiff Barich's comments during her allotted time slot," and "Plaintiff Barich made no attempts to request reasonable alternative accommodations, and insisted that postponement and relocation of the meeting was the only acceptable accommodation to him" are inadmissible.

Contrary to Plaintiffs' arguments, simply because a video recording exists does not preclude *all* of Mr. Huber's expert testimony.[1] The jury may view the videos and draw their own

---

[1] *Norse* does not obligate the Court to find otherwise. Plaintiffs cite the concurring opinion, which states that the judge would have been "happy to allow" the video of the incident "speak for itself." P's MIL No. 1 at 2–3; *Norse v. City of Santa Cruz*, 629 F.3d 966, 979 (9th Cir. 2010). Notably, the concurring opinion does not invoke the video recording in order to exclude expert testimony

5

1 conclusions from the video recordings of the original events.

2 Thus, the Court **DENIES** the motion in limine and permits Mr. Huber's expert testimony
3 on the limited scope of the common customs, practice, and rules of city councils without weighing
4 in upon the factual conclusions about the hearings at issue. Provided a foundation is laid, he may
5 comment also upon common accommodations made for the hearing impaired.

6 B.   Defendant's Motion in Limine No. 1 (Docket No. 93)

7 Defendants request that the Court exclude evidence of and reference to four incidents cited
8 in Plaintiffs' complaint—specifically, one incident in paragraph 22, one in paragraph 23, and two
9 in paragraph 25:

- 22. This is not the first time the City has violated Barich's civil rights during and after City Council meetings. In 2014, the City's Chief of Police threatened to arrest Barich for exercising his First Amendment rights, leading to a similar federal civil rights action against the City and Chief Parish, *Barich v. City of Cotati and Michael Parish*, Case No. 3:15-CV-00350 VC, which was settled in 2015 with the payment of $50,000 by the City to Barich. At that time, the Court, the Honorable Vince Chhabria presiding, said the Court was shocked at the City's, and its counsel's, attitude toward the First Amendment. The Court declined to order an injunction against the City but warned that further violation of Barich's First Amendment rights would result in harsh consequences for the City. Undeterred by the threat of further action, the City has continued to violate Barich's rights, including his right to Equal Protection.

- 23. In 2006, Barich had campaigned extensively against former Cotati Mayor Lisa Moore's campaign for re-election as Council member. She lost. In 2007, then-private citizen John Moore, husband of Lisa Moore, while clearly intoxicated, approached Barich in the audience at a regularly scheduled City Council meeting. Moore said, "Barich, I'm going run you out of town!" An argument ensued, and then-Mayor Pat Gilardi told them both to "knock it off or take it outside."

- 25. In July of 2017, during a City Council meeting, there was discussion of additional cannabis industry business taxes in Cotati. During public comment, Barich spoke against the tax. In an attempt to intimidate and harass Barich, then-Council member John Moore asked Barich, "Mr. Barich, are you still a

---

regarding the incident featured; rather, it invokes the video recording as factual support for the judge's conclusion that the city officials engaged in viewpoint discrimination and were not entitled to qualified immunity. *Norse*, 629 F.3d at 979. And neither it nor the majority opinion contain any holding that an expert's testimony on a video recording should be excluded simply because a video recording exists. *Id.* at 978.

6

> grower?" The implication was false. Barich had never been a "grower." Later in 2017, in an obvious attempt to chill Barich's speech, Council member John Moore called Barich a "money launderer" when Barich tried to speak toward the end of the meeting during the public comment period. Again, the allegation was false. Barich had never been charged with, nor convicted of, the crime of money laundering. That same John Moore was duly appointed Mayor of Cotati on December 8, 2020 and has replaced Dell'Osso.

Docket No. 1 (Complaint). Defendants argue that these four incidents involve matters long since passed, factually disconnected from the issues in the present case, and of no probative value to the claims here. Docket No. 93 (D's Motion in Limine No. 1 ("D's MIL No. 1")) at 7.

Regarding paragraph 22, where the City settled with Mr. Barich after the City police chief threatened Mr. Barich and violated his First Amendment rights, the Court permits the parties to describe the high-level facts of the 2014 suit but not the details of the settlement or Judge Chhabria's comments regarding the City's behavior. The paragraph 22 incident is relevant under Rule 401 and 402 because Mr. Barich asserts there is a long history of animosity and ill-will between the City and Mr. Barich, and this may be relevant to whether the City and Mr. Dell'Osso intended to violate Mr. Barich's rights. Although it is unclear whether Mr. Dell'Osso was present during the 2014 incident, Mr. Dell'Osso was apparently aware of the lawsuit and the subsequent settlement. *See* D's MIL No. 1 Exh. A at 1 (the minutes of City Council meeting of October 27, 2015). It is therefore relevant to state of mind. This evidence is not barred under Rule 404(b). "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)–(2). The evidence about the lawsuit may be circumstantial evidence of the City's "intent to discriminate and/or retaliate," an exception to impermissible character evidence. The Court **DENIES** the motion in limine with respect to the high-level facts of the 2014 lawsuit, Defendants' denial of the allegations, and the fact that the suit resolved in 2015. Evidence as to the deeper details will be barred under Rule 403. Evidence of the City's eventual settlement with Mr. Barich is inadmissible under Rule 408. Judge Chhabria's statement that he was shocked at the

7

City's behavior is also inadmissible as hearsay and under Rule 403. The Court thus **GRANTS** the motion in limine with respect to the details of the settlement and Judge Chhabria's comments.

Regarding paragraph 23 and 25, involving John Moore's interactions with Mr. Barich when he was a then-private citizen and then-Council member, the Court excludes this evidence. Defendants argue that the evidence is entirely irrelevant and would spawn mini trials regarding the facts of those incidents. D's MIL No. 1 at 6–7. In their response brief, Plaintiffs agree to exclude this evidence: "Plaintiffs concede that the relevance is outweighed by the potential for the undue consumption of time and confusion on an arguably collateral matter. Mr. Moore did not preside over the meetings in question; nor did he vote to prevent the Barich statement from being read and whether to limit the accommodation offered to the 'raise your hand' option offered by Mr. Dell'Osso." P's Opp. to D's MIL No. 1 at 2. The Court **GRANTS** the motion in limine with respect to paragraphs 23 and 25.

C. <u>Defendant's Motion in Limine No. 2 (Docket No. 94)</u>

Defendants request that the Court exclude evidence of other Council meetings—other than the ones that were held on January 8, January 22, and March 27, 2019—at which some attendees allegedly spoke on behalf of others. Docket No. 94 (Defendant's Motion in Limine No. 2 ("D's MIL No. 2")) at 2. The First Amended Complaint lists thirteen examples of meetings at which individuals allegedly spoke for others during the open comment period:

- 03/10/2010 Bob Haroch of Beyers-Costin for Colvin Group, seeking development applications approvals;
- 08/25/2015 Andrew Alderman for Laurie Alderman (Plaintiff);
- 08/25/2015 Mr. Scott, Attorney for the Stanleys;
- 10/27/2015 Mr. Scott for the Stanleys;
- 10/26/2016 Neil Randolph & Guy Chambers of Colvin Group;
- 03/28/2017 Neil Randolph of Colvin Group & Dave Brown of Adobe Associates;
- 05/09/2017 Dalene Whitcock for Colvin Group;
- 06/13/2017 Robin Miller of 116 Investors, LLC;
- 06/27/2017 Aksel Dregelid of David Taussig and Associates;

8

> Guy Chamber for Colvin Group;
>
> - 09/12/2017 Nathan Perez for David Taussig and Associates;
>
> - 06/12/2018 Nick Caston with Kaya Management & Alta Supply; Angelo Bertam with Eagle Eye, LLC; Craig Enyart, Representative for 7950 Redwood Dr.;
>
> - 08/21/2018 Neil Randolph for Colvin Group;
>
> - 09/10/2019 Michael Ceremello (who did not identify himself before speaking) for Ourania Riddle, a resident of Dixon, regarding the choice to elect or appoint the City Clerk and City Treasurer.

Docket No. 22 (First Amended Complaint ("FAC")) ¶ 19. Defendants argue that evidence of other City Council meetings is inadmissible because all but one do not pertain to Mr. Barich's specific constitutional claims that he represents the class of "individuals desiring to speak at City Council meetings but who are unable to attend an seek to have their statements *read into the record by a third party*" and Ms. Alderman assertion of the class of "individuals desiring to speak at City Council meetings to orally present a written statement by someone who is unable to attend and who has authorized another person to *read his or her statement into the record*." D's MIL No. 2 at 2–3 (emphasis added). The examples (but one) cited by Plaintiffs involve speakers advocating for others, not reading their statements.

However, the Court permits the evidence of all City Council meetings listed here. Although most of these City meetings do not involve speakers attempting to read a statement on another individual's behalf—and thus arguable may not be examples of "similarly situated" individuals to which Plaintiffs can be compared based as Plaintiffs' claims as framed in the FAC—these City meetings are nonetheless relevant. They are probative of whether the City had a rule against reading on behalf of others and whether such a rule was regularly enforced. If there was no rule against speaking generally on another's behalf, the jury might infer there was no rule against reading a statement on the absent party's behalf. The jury might assume there is no material difference between the two. Whether such a rule existed or the rule was made up on the spot to single out Plaintiffs is relevant to Plaintiffs' allegations of disparate treatment. *See* Fed. R. Evid. 402 (requiring that evidence must have a "tendency to make a fact more or less probable than it would be without the evidence" and that fact must be of "consequence in determining the

1  action"). The Court thus **DENIES** the motion in limine.

## V. EXHIBITS

Both parties have provided lists of exhibits and subsequent amendments. *See* Docket No. 90 Exh. A; Docket No. 103; Docket No. 104. With regards to the responses to requests for admission, responses to special interrogatories, and stipulation of facts, the parties will only be permitted to read the evidence into the record as part of their allotted trial time. With regards to objections to exhibits, the Court rules as follows (appended hereto as Exhibit A).

## VI. PRELIMINARY STATEMENT TO THE JURY

The parties have agreed on the following preliminary statement to the jury. *See* Docket No. 90 at 5.

> Plaintiffs claim that, at two City of Cotati Council meetings in 2019, Laurie Alderman was improperly prohibited from reading a statement written by George Barich, which written statement the City included in the official record of the meeting. George Barich claims that he was not properly accommodated for a hearing disability at a City of Cotati Strategic Planning Meeting. Defendants City of Cotati and former Mayor John Dell'Osso dispute Plaintiffs' claims.

The Court accepts this preliminary statement.

## VII. JURY INSTRUCTIONS

The parties have both submitted proposed jury instructions. *See* Docket No. 99; Docket No. 101. The Court will address the jury instructions in a separate order. The Court intends to file proposed jury instructions and give the parties an opportunity to raise objections.

## VIII. JURY VERDICT FORM

The parties have both submitted proposed special verdict forms. *See* Docket No. 97; Docket No. 100. The Court has provided a proposed jury verdict form to the parties and given the parties an opportunity to raise objections. It has determined it will give its proposed verdict form.

## IX. VOIR DIRE AND QUESTIONNAIRE

The parties have submitted joint proposed voir dire questions. *See* Docket No. 91. In addition to the standard eleven questions included in the Court's Standing Order, the parties included nine case-specific questions, as follows:

1. How often do you attend City Council or other public agency meetings?
2. Do you believe there should be any limits on a citizen's right to speak during a City Council meeting? ☐ Yes ☐ No. If Yes, please explain.
3. Do you or any of your family members or friends have a disability? ☐ Yes ☐ No. If Yes, please explain the type of disability and what types of accommodations it requires.
4. Have you ever requested an accommodation under the Americans with Disabilities Act? ☐ Yes ☐ No. If Yes, please explain.
5. Do you have any problem hearing? ☐ Yes ☐ No. If Yes, please explain.
6. Do you believe that a disabled person should be able to reject a reasonable accommodation if they want a different accommodation? ☐ Yes ☐ No. If No, please explain.
7. Do you believe entities should have to offer a disabled person more than one option of reasonable accommodations if the person is not satisfied with the provided reasonable accommodation? ☐ Yes ☐ No. If No, please explain.
8. Do you feel you have ever been discriminated against based upon a physical limitation or your age? ☐ Yes ☐ No. If Yes, please explain.
9. To what extent do you agree or disagree with the following statements:
    a. The Cotati City Council does a good job protecting the public interest. (Disagree Strongly, Disagree Somewhat, Neutral/No, Agree Somewhat, Agree Strongly)
    b. I feel my community is well-represented by the Cotati City Council. (Disagree Strongly, Disagree Somewhat, Neutral/No, Agree Somewhat, Agree Strongly)

The Court accepts these questions—with the addition of the "Don't Know" answer option in Question 9a and 9b—in addition to the Court's standard questions (appended hereto as Exhibit B). Further, the Court intends to add the following questions:

10. Do you have any special health concerns which would interfere with your jury service? If so, please explain.

11

11. This trial is expected to start on Monday, February 6, 2023, and last for one (1) week, plus any additional time for jury deliberations.  Trial will run from 8:30 a.m. to 2:00 p.m. except that the Monday session on February 6 will run until 4:00 p.m.  There is no court on Thursdays.  Is there any reason why serving as a juror during this period is impossible or extremely difficult for you?  If so, please explain.

Any objections to these questions must be filed by 4:00 p.m., December 30, 2022.

**IT IS SO ORDERED**.

Dated: December 22, 2022

_____
EDWARD M. CHEN
United States District Judge